[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ohio State Univ. v. Pratt*, Slip Opinion No. 2022-Ohio-4111.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-4111

THE STATE EX REL. OHIO STATE UNIVERSITY, APPELLEE, *v.* PRATT, APPELLANT; INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ohio State Univ. v. Pratt*, Slip Opinion No. 2022-Ohio-4111.]

*Workers' compensation—Temporary-total-disability compensation—Voluntary abandonment—Key question in determining compensation under the voluntary-abandonment rule is whether an injured worker has abandoned the workforce, not merely the former position—Determination of voluntary abandonment requires consideration of all relevant circumstances existing at the time of the alleged abandonment—Court of appeals' judgment granting writ of mandamus reversed.*

(No. 2021-1350—Submitted August 2, 2022—Decided November 18, 2022.)

APPEAL from the Court of Appeals for Franklin County, No. 19AP-603, 2021-Ohio-3420.

_____

**Per Curiam.**

{¶ 1} Appellant, Lori Pratt, gave her former employer, appellee Ohio State University, two weeks' notice of her intention to resign. In the ensuing two weeks, Pratt sustained a work injury, had surgery, and accepted an offer of employment from a different employer. The Industrial Commission of Ohio awarded Pratt temporary-total-disability ("TTD") compensation.

{¶ 2} Ohio State asked the Tenth District Court of Appeals for a writ of mandamus ordering the commission to reverse its decision because Pratt had resigned from her employment with Ohio State prior to her injury. The Tenth District granted the writ, relying on its interpretation of our opinion in *State ex rel. Klein v. Precision Excavating & Grading Co.*, 155 Ohio St.3d 78, 2018-Ohio-3890, 119 N.E.3d 386, and Pratt appealed.

{¶ 3} This case presents the question whether our decision in *Klein* redefined voluntary abandonment of the *workforce* as voluntary abandonment of the injured worker's *position*. We answer that question in the negative. We further conclude that Ohio State has not shown that the commission abused its discretion by determining that but for her work injury, Pratt would have remained in the workforce. We therefore reverse the Tenth District's judgment and deny the writ.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 4} On June 20, 2017, after working for Ohio State for nearly ten years, Pratt submitted a letter of resignation, stating that her last day of work would be July 5. However, on June 24, she sustained injuries while working for Ohio State. Ohio State, a self-insuring employer, allowed her workers' compensation claim for right-elbow injuries. She had surgery on June 27. On June 28, she received a written offer of employment from Sweet Carrot, with work to commence at a "time to be decided by mutual agreement in late summer/early fall [of] 2017." Pratt signed the offer letter, accepting the terms of employment.

{¶ 5} Pratt requested TTD compensation commencing from the date of her injury, which Ohio State initially granted. However, Ohio State later asked the commission to terminate Pratt's TTD compensation based on her resignation letter. A district hearing officer ("DHO") granted the request, because Pratt's "voluntary departure from employment by virtue of her 6/20/2017 resignation * * * precludes receipt of temporary total disability compensation." Pratt appealed.

{¶ 6} In proceedings before a staff hearing officer ("SHO"), Pratt introduced evidence of her job offer from Sweet Carrot. Similar evidence had not been presented to the DHO. The SHO vacated the DHO's order and denied Ohio State's request to terminate TTD compensation. The SHO explained that Pratt "did not voluntarily abandon the workforce when she announced her resignation from employment with [Ohio State] on 6/20/2017. Prior to writing the 6/20/2017 letter, [Pratt] had been in discussion with hiring personnel from Sweet Carrott [sic] for a new job," showing that Pratt did not intend to abandon the workforce.

{¶ 7} The commission refused Ohio State's appeal of the SHO's order. Ohio State moved for reconsideration. The commission declined to exercise its continuing jurisdiction, finding that the SHO's order contained no mistakes of law or fact.

{¶ 8} Ohio State filed this mandamus action in the Tenth District, asking that court to order the commission to reverse its order awarding TTD compensation and declare an overpayment. A magistrate recommended that the court grant a writ ordering the commission to vacate its order, award TTD compensation through July 5, 2017 (the effective date of Pratt's resignation from Ohio State), and deny compensation for periods thereafter. Pratt and the commission objected.

{¶ 9} The court overruled Pratt's objections, sustained a limited objection made by Ohio State, and adopted the magistrate's opinion. The court issued a writ

ordering the commission to vacate its order and award compensation only through July 5, 2017. Pratt appealed.[1]

## II. ANALYSIS

{¶ 10} The Tenth District issued a writ based on its interpretation of *Klein*, which that court understood to premise voluntary abandonment on an injured worker's departure from the former position of employment rather than the workforce. *See* 2021-Ohio-3420, 178 N.E.3d 991, ¶ 6 ("While the Commission argues that 'Pratt did not voluntarily abandon the workforce based upon the employment offer,' that is not the test. * * * Under *Klein*, we must look at whether respondent voluntarily removed herself from her former position of employment * * * "). Pratt asserts that the Tenth District improperly interpreted *Klein*. Ohio State asserts that the Tenth District interpreted *Klein* correctly and that the SHO misapplied the law of voluntary abandonment.[2]

---

1. The commission was named as an appellant on Pratt's first amended notice of appeal, but Pratt filed a second amended notice of appeal in which the commission was not named. The commission has filed an appellee brief stating that it did not appeal the Tenth District's decision but that it "aspires to assist this Court in its consideration by presenting the commission's findings of fact and propositions of law."

2. The commission states only that *Klein*, and not R.C. 4123.56(F), controls whether Pratt is eligible for TTD compensation. R.C. 4123.56(F) provides:

> If an employee is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury or occupational disease, the employee is entitled to receive compensation under this section, provided the employee is otherwise qualified. If an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive compensation under this section. It is the intent of the general assembly to supersede any previous judicial decision that applied the doctrine of voluntary abandonment to a claim brought under this section.

The commission is correct that R.C. 4123.56(F) does not apply here: it became effective September 15, 2020, *see* 2020 Am.Sub.H.B. No. 81, after the commission decided Pratt's claim. We decided *Klein* before the commission issued its final order in this case, so *Klein* applies in this case.

### *A. Legal Standards*

**{¶ 11}** In a direct appeal of a mandamus action originating in the court of appeals, we review the judgment as if the action had been originally filed here. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141, 164, 228 N.E.2d 631 (1967). Ohio State is entitled to a writ of mandamus if it shows by clear and convincing evidence that it has a clear legal right to the requested relief, that the commission has a clear legal duty to provide that relief, and that there is no adequate remedy in the ordinary course of the law. *State ex rel. Zarbana Industries, Inc. v. Indus. Comm.*, 166 Ohio St.3d 216, 2021-Ohio-3669, 184 N.E.3d 81, ¶ 10. When an order of the commission "is adequately explained and based on some evidence, there is no abuse of discretion and a reviewing court must not disturb the order." *State ex rel. Aaron's, Inc. v. Ohio Bur. of Workers' Comp.*, 148 Ohio St.3d 34, 2016-Ohio-5011, 68 N.E.3d 757, ¶ 18.

### *B. The Tenth District and Ohio State Misread* Klein

**1. Prior to *Klein*, we clarified that voluntary abandonment focuses on departure from the workforce, not the position**

**{¶ 12}** In *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51, we "trace[d] the history and theoretical underpinnings of the voluntary abandonment rule," *id*. at ¶ 13. We explained that "[a]s initially conceived, the voluntary abandonment rule rested on the presumption that eligibility for TTD compensation depended upon the claimant's continued employment at the job where the injury occurred." *Id*. Early decisions relying on this definition included *State ex rel. Jones & Laughlin Steel Corp. v. Indus. Comm.*, 29 Ohio App.3d 145, 504 N.E.2d 451 (10th Dist.1985), and *State ex rel. Ashcraft v. Indus. Comm.*, 34 Ohio St.3d 42, 517 N.E.2d 533 (1987).

**{¶ 13}** However, from 1985 through 2000, every case in which we found that voluntary abandonment barred TTD compensation "involved a claimant who had not only abandoned the former position of employment, but who was also

unemployed over the claimed period of disability." *McCoy* at ¶ 22. Thus, we never considered during that time period whether leaving the prior position of employment *by itself* eliminated eligibility for TTD compensation if the claimant otherwise would have been employed during the disability period. *Id.*

{¶ 14} When we confronted that question in *State ex rel. Baker v. Indus. Comm.*, 89 Ohio St.3d 376, 732 N.E.2d 355 (2000), we "reexamine[d] the proposition that eligibility for TTD compensation depends generally upon whether the former position of employment would still be available to the claimant when his or her industrial injury stabilizes." *McCoy* at ¶ 22. In *Baker*, we held that a claimant who left the former position of employment to accept a new position and who subsequently reaggravated the original injury while working at the new job was eligible to receive TTD compensation. *Baker* at syllabus. We called this situation "maintaining [a] continued presence in the workforce," *id.* at 383, and explained that our holding merely recognized "the job mobility of today's labor market," *id.* at 384.

{¶ 15} A contrary rule, we reasoned in *Baker*, would "consign all workers to a particular employment position and employer unless they were willing to abandon some earned benefits." *Id.* at 384. We agreed with the judge who dissented from the court of appeals' judgment in that case: " 'The workers' compensation system cannot be used to chain a worker to one specific employer. * * * A change of jobs does not constitute an abandonment of employment and does not automatically break the chain of cause and effect.' " *Id.*, quoting Judge Tyack's dissenting opinion in the court of appeals.

{¶ 16} In *McCoy*, we extended *Baker*'s holding to apply to injured workers who had been terminated from their former positions (rather than leaving voluntarily) but then reentered the workforce and reaggravated their original work injury, and we concluded that those workers were eligible for TTD compensation. *McCoy*, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51, at ¶ 27. As we said in

*McCoy*, our analysis in *Baker* "eliminates the 'former position of employment' test as a viable foundation for the voluntary abandonment rule." *McCoy* at ¶ 30.

{¶ 17} Instead, we explained, "the justification for the voluntary abandonment rule emanates from a different source," *id*. at ¶ 34, i.e., the purpose of TTD compensation under R.C. 4123.56, which is to compensate injured workers for their loss of earnings. *McCoy* at ¶ 35. Therefore,

> in order to qualify for TTD compensation, the claimant must show not only that he or she lacks the medical capability of returning to the former position of employment but that a cause-and-effect relationship exists between the industrial injury and an actual loss of earnings. In other words, it must appear that, but for the industrial injury, the claimant would be gainfully employed.

*Id*. at ¶ 35.

{¶ 18} Accordingly, since *Baker* and *McCoy*, it has been clear that the key question is whether an injured worker who is no longer in the former position has abandoned the workforce, not merely abandoned the former position. For example, in *State ex rel. Hildebrand v. Wingate Transport, Inc.*, 141 Ohio St.3d 533, 2015-Ohio-167, 26 N.E.3d 798, ¶ 1, we stated that the commission had determined that the injured worker had "*voluntarily abandoned the workforce* when he quit his job for reasons unrelated to his industrial injury and therefore was ineligible for temporary-total-disability compensation." (Emphasis added.) The commission had determined that the worker "voluntarily quit * * * and had not reentered the workforce." *Id*. at ¶ 8. The worker sought a writ, and the Tenth District and this court both denied it. We explained:

When determining an injured worker's eligibility for temporary-total-disability compensation, the initial focus is on whether the employee's departure from *employment* (resulting in a loss of earnings) was causally related to the allowed conditions of the claim. \* \* \* If the injured worker *leaves the workforce* for reasons unrelated to the industrial injury, there is no loss of earnings due to the injury, and the employee is not eligible for temporary-total-disability compensation.

(Emphasis added.)  *Id*. at ¶ 21.

{¶ 19} This inquiry is consistent with R.C. 4123.56(A), which provides:

[P]ayment [of TTD compensation] shall not be made for the period when any employee has returned to work, when an employee's treating physician has made a written statement that the employee is capable of returning to the employee's former position of employment, when work within the physical capabilities of the employee is made available by the employer *or another employer*, or when the employee has reached the maximum medical improvement.

(Emphasis added.)

{¶ 20} In sum, when *Klein* came before us, the analysis in voluntary-abandonment cases was focused on whether the injured worker had left the *workforce* for reasons unrelated to the industrial injury.

**2.  *Klein* did not change the focus on abandonment of the workforce**

{¶ 21} Our opinion in *Klein* evinced no intent to change that aspect of the voluntary-abandonment analysis.  Rather, in *Klein*, we discussed in depth the long-

standing rule that a claimant who voluntarily abandoned employment was nevertheless entitled to TTD compensation if the claimant was incapable of returning to the former position at the time of the abandonment. *Klein*, 155 Ohio St.3d 78, 2018-Ohio-3890, 119 N.E.3d 386, at ¶ 16-30. In *Klein*, we expressly abandoned that rule, overruling *State ex rel. Reitter Stucco, Inc. v. Indus. Comm.*, 117 Ohio St.3d 71, 2008-Ohio-499, 881 N.E.2d 861, and *State ex rel. OmniSource Corp. v. Indus. Comm.*, 113 Ohio St.3d 303, 2007-Ohio-1951, 865 N.E.2d 41. *Klein* at ¶ 29.

{¶ 22} In doing so, we relied on *McCoy*. *See, e.g.*, *Klein* at ¶ 18, 32, 35. We did not reject or overrule *McCoy* or *Baker*. While our opinion in *Klein* refers to both abandonment of "employment" and of the "position of employment" interchangeably and our holding refers to an injured worker who "voluntarily removes himself from his former position of employment for reasons unrelated to a workplace injury," *id*. at ¶ 29, that holding was phrased in terms of the facts at issue in *Klein*. In that case, the injured worker had resigned to move to another state and look for work there. There was no other position of employment in the picture. Klein's abandonment of his former position was therefore equivalent to abandonment of the workforce during the period for which he sought TTD compensation.

{¶ 23} But we acknowledged that that might not be the case in all instances: "Our decision here does not stand for the proposition * * * that a relocation automatically constitutes voluntary abandonment. A determination of voluntary abandonment requires consideration of all relevant circumstances existing at the time of the alleged abandonment." *Id*. at ¶ 43.

{¶ 24} The question is whether those circumstances demonstrate a voluntary abandonment of the workforce—permanent or temporary—such that the injured worker's wage loss is not the result of the work injury. In other words, do

the circumstances indicate that the injured worker would be working—somewhere—but for the injury?

### 3. Ohio State has not shown an abuse of discretion

{¶ 25} As we explained in *Klein*, "[v]oluntary abandonment of employment is primarily a question of intent that 'may be inferred from words spoken, acts done, and other objective facts,' and '[a]ll relevant circumstances existing at the time of the alleged abandonment should be considered.' " (Brackets sic.) *Klein*, 155 Ohio St.3d 78, 2018-Ohio-3890, 119 N.E.3d 386, at ¶ 39, quoting *State v. Freeman*, 64 Ohio St.2d 291, 297, 414 N.E.2d 1044 (1980). "The presence of that intent is a factual determination for the commission." *Id.*

{¶ 26} The commission found that Pratt's "employment offer from Sweet Carrott [sic] corroborate[d] the Injured Worker's persuasive statements at [the] hearing that she did not voluntarily abandon the workforce when she announced her resignation from employment with the Employer of Record." The commission "conclude[d] from the circumstances surrounding the Injured Worker's plan to leave her job on 07/05/2017 that she did not intend to abandon the workforce." In essence, the commission concluded that but for the work injury, Pratt would have been gainfully employed at Sweet Carrot during the period for which she sought TTD compensation.

{¶ 27} An order supported by some evidence is not an abuse of discretion. *See Aaron's, Inc.*, 148 Ohio St.3d 34, 2016-Ohio-5011, 68 N.E.3d 757, at ¶ 18. The commission cited the Sweet Carrot job offer, Pratt's acceptance of that offer, and Pratt's hearing testimony in support of its factual finding that Pratt would have remained gainfully employed but for her work injury. Because Ohio State has not shown that the commission's order was unsupported by evidence in the record or that it was contrary to law, Ohio State has not established that the commission abused its discretion.

## III. CONCLUSION

**{¶ 28}** For the foregoing reasons, we reverse the Tenth District's judgment and deny the writ.

Judgment reversed.

O'CONNOR, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

KENNEDY, J., concurs in judgment only.

—————————

Dave Yost, Attorney General; and Park Street Law Group, L.L.C., and Donald P. Beck, for appellee Ohio State University.

Agee, Clymer, Mitchell & Portman, Sara L. McElroy, and Eric B. Cameron, for appellant.

Dave Yost, Attorney General, and Cindy Albrecht, Assistant Attorney General, for appellee Industrial Commission of Ohio.

—————————