[Cite as *State ex rel. AutoZone Stores, Inc. v. Indus. Comm.*, 2023-Ohio-633.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio ex rel. Autozone Stores, Inc., :

        Relator, :

v. : No. 21AP-294

Industrial Commission of Ohio et al., : (REGULAR CALENDAR)

        Respondents. :

D E C I S I O N

Rendered on March 2, 2023

**On brief:** *Crabbe Brown & James, LLP*, and *John C. Albert*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *Denise A. Gary*, for respondent Industrial Commission of Ohio.

**On brief:** *Casper, Casper & Casper, LLC*, and *Kolet Buenavides*, for respondent Jason W. Schomaker.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

DORRIAN, J.

{¶ 1} Relator, Autozone Stores, Inc. ("employer") filed this action in mandamus seeking a writ to compel respondent Industrial Commission of Ohio ("commission") to vacate its order granting the request for temporary total disability ("TTD") compensation filed by respondent Jason W. Schomaker ("claimant"). Having determined the magistrate correctly concluded claimant's approved surgery rendered him unable to work as the direct result of an impairment arising from a workplace injury under newly enacted R.C. 4123.56(F), we find claimant is entitled to TTD compensation for the period following the

approved surgery. The employer's objections implicating claimant's prior termination and the voluntary abandonment doctrine are overruled, and we deny the writ.

## I. Facts and Procedural History

{¶ 2} Initially, we note the employer has not set forth a specific objection challenging the magistrate's findings of fact. Having independently reviewed the record, we adopt the magistrate's findings of fact as our own.

{¶ 3} As provided in more detail in the magistrate's decision, claimant was working as an assistant store manager for the employer when he sustained a workplace injury on June 15, 2020. A workers' compensation claim was allowed for multiple conditions concerning his shoulder, and claimant was placed on light duty. Claimant was then involved in an argument with another employee and, after an internal investigation into the incident, the employer terminated claimant on September 16, 2020. The Ohio Department of Job and Family Services granted claimant's request for unemployment benefits after finding the termination occurred without just cause.

{¶ 4} Claimant filed C-84 TTD compensation request forms on October 12 and 20, 2020, which were denied by the employer on November 5, 2020. On November 16, 2020, claimant underwent an approved shoulder surgery, and a physician issued MEDCO-14 forms indicating claimant cannot work until further evaluation.

{¶ 5} The district hearing officer ("DHO") denied claimant's request for TTD compensation after delving into the details of claimant's termination and then finding claimant failed to articulate evidence entitling him to TTD compensation for the period of September 17, 2020 through the date of the hearing with the DHO, December 16, 2020. Claimant appealed, and, after another hearing, the staff hearing officer ("SHO") granted claimant's request for TTD compensation, but only for the period between his surgery and the hearing with the SHO. In doing so, the SHO rejected the employer's argument that TTD compensation should be denied since claimant had been terminated. Instead, the SHO determined, based on the fact claimant was under restrictions due to the allowed conditions at the time of the termination and was completely removed from the workforce after the subsequent approved surgery (as evidenced by the MEDCO-14 forms), that under R.C. 4123.56(F) claimant was unable to work as a direct result of an impairment arising from the allowed injury from the date of the allowed surgery through the date of the hearing.

{¶ 6} The employer filed the instant writ of mandamus seeking to vacate this result. Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, the matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The assigned magistrate reached similar conclusions as the SHO. Specifically, the magistrate found, based on the plain language of R.C. 4123.56(F), claimant's reason for not working prior to the date of his surgery is irrelevant for purposes of determining his eligibility for TTD compensation. In the magistrate's view, the physician's MEDCO-14 forms showed the approved surgery completely removed claimant from the workforce and from that point forward claimant was not working for a reason directly attributable to the approved surgery necessitated by the workplace injury. As a result, the magistrate found claimant is entitled to TTD compensation as of the date of his surgery and recommends this court deny the employer's request for a writ of mandamus.

## II. Standard of Review

{¶ 7} In order for this court to issue a writ of mandamus, a relator must show by clear and convincing evidence a clear legal right to the requested relief, that the commission has a clear legal duty to provide that relief, and there is no adequate remedy in the ordinary course of the law. *State ex rel. Zarbana Industries, Inc. v. Indus. Comm.*, 166 Ohio St.3d 216, 2021-Ohio-3669, ¶ 10. When an order of the commission "is adequately explained and based on some evidence, there is no abuse of discretion and a reviewing court must not disturb the order." *State ex rel. Aaron's, Inc. v. Ohio Bur. of Workers' Comp.*, 148 Ohio St.3d 34, 2016-Ohio-5011, ¶ 18. Questions of law are reviewed de novo on appeal. *State ex rel. Ewart v. State Teachers Retirement Sys. Bd. of Ohio*, 10th Dist. No. 18AP-726, 2019-Ohio-2459, ¶ 38.

## III. Discussion

{¶ 8} The employer filed the following five objections to the magistrate's decision:

[I.] The Magistrate Erred in Concluding that Respondent Schomaker was Unable to Work as a "Direct" Result of His Injury.

[II.] The Magistrate Erred in not Applying the Entirety of the First Sentence of R.C. §4123.56(F).

[III.] The Magistrate Erred in not Applying All of the Terms of
the Second Sentence of R.C. §4123.56(F).

[IV.] The Magistrate Erred Because Respondent had no Lost
Wages.

[V.] The Magistrate Erred in Finding Reasons for not Working
up to the Date of His Surgery were Irrelevant.

The objections collectively challenge the magistrate's understanding and application of R.C. 4123.56(F), a new section added in 2020 to the statute governing TTD compensation. The parties both agree R.C. 4123.56(F) applies in this case.[1] Because the five objections are interrelated and turn on the meaning and application of R.C. 4123.56(F), we address them together.

### A. TTD Compensation, the "Voluntary Abandonment" Doctrine, and Enactment of R.C. 4123.56(F)

{¶ 9} Article II, Section 35 of the Ohio Constitution permits the legislature to pass laws, in pertinent part, "[f]or the purpose of providing compensation to workmen * * * for * * * injuries or occupational disease, occasioned in the course of such workmen's employment." The laws governing workers' compensation set forth in Chapter 4123 of the Revised Code reflect this general purpose, "provid[ing] that an employee who is injured in the course of employment is entitled to receive 'compensation for loss sustained on account of the injury.' " *State ex rel. Gross v. Indus. Comm.*, 115 Ohio St.3d 249, 2007-Ohio-4916, ¶ 7, quoting R.C. 4123.54(A).

{¶ 10} R.C. 4123.56, which controls compensation in case of temporary disability, does not define requirements for TTD compensation explicitly but does express circumstances when TTD payments "shall not be made." R.C. 4123.56(A). Specifically, TTD payments "shall not be made":

> [F]or the period when any employee has returned to work,
> when an employee's treating physician has made a written
> statement that the employee is capable of returning to the
> employee's former position of employment, when work within

---

[1] The 2020 amendment adding R.C. 4123.56(F) "appl[ies] to claims pending on or arising after the effective date," which is September 15, 2020. Section 3 of 2020 Am.Sub.H.B. No. 81; *State ex rel. Ohio State Univ. v. Pratt*, __ Ohio St.3d __, 2022-Ohio-4111, ¶ 10, fn. 2; *State ex rel. Cleveland Metro. School Dist. v. Indus. Comm.*, 10th Dist. No. 20AP-139, 2022-Ohio-2150, ¶ 47-48.

the physical capabilities of the employee is made available by the employer or another employer, or when the employee has reached the maximum medical improvement.

R.C. 4123.56(A).

{¶ 11} R.C. 4123.56(B) accounts for situations where an employee suffers a "wage loss" due to a workplace injury or occupational disease and provides a formula to compensate the employee for the reduction of wages resulting from employment in a lower paying position or from the employee's inability to find employment consistent with his or her disability. R.C. 4123.56(B)(1) and (2). The statute also addresses situations specific to employees of professional sports franchises, employees who are receiving both TTD compensation and social security benefits, and employees who are eligible for TTD compensation but lack a determination of their "full weekly wages." R.C. 4123.56(C), (D), and (E).

{¶ 12} Over time, courts applying R.C. 4123.56 developed the "voluntary abandonment" doctrine to address fact patterns that called into question whether an employee seeking TTD compensation suffered a loss of earnings in line with the purpose of the workers' compensation statutes. *See, e.g., State ex rel. Baker v. Indus. Comm.*, 89 Ohio St.3d 376 (2000) (applying voluntary abandonment doctrine to determine a claimant who changed jobs and subsequently reaggravated the original injury was eligible for TTD compensation); *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305 (applying voluntary abandonment doctrine to hold that a claimant who was terminated from employment but reentered the workforce and reaggravated the work injury was still eligible for TTD compensation). The purpose of the "voluntary abandonment" doctrine was to ensure " 'a cause-and-effect relationship exists between the industrial injury and an actual loss of earnings.' " *State ex rel. Ohio State Univ. v. Pratt*, ___ Ohio St.3d ___, 2022-Ohio-4111, ¶ 17, quoting *McCoy* at ¶ 35.

{¶ 13} The Supreme Court of Ohio explained "when a claimant removes himself from employment for reasons unrelated to the work-related injury, he is no longer eligible for temporary-total-disability compensation [since] the voluntary abandonment—and not the injury—causes the loss of wages." *State ex rel. Klein v. Precision Excavating & Grading Co.*, 155 Ohio St.3d 78, 2018-Ohio-3890, ¶ 19, citing *McCoy* at ¶ 38. The voluntary abandonment of the workforce analysis required evaluating " 'all relevant circumstances

existing at the time of the alleged abandonment' " to determine whether the injured worker's wage loss is not the result of the work injury. *Pratt* at ¶ 23, quoting *Klein* at ¶ 43. "In other words, do the circumstances indicate that the injured worker would be working—somewhere—but for the injury?" *Id.* at ¶ 24.

{¶ 14} In 2020, the Ohio legislature enacted 2020 Ohio Am.Sub.H.B. No. 81 to, in part pertinent to this case, supersede judicial decisions applying the voluntary abandonment doctrine. *See* Am.Sub.H.B. No. 81, Section 1, addition of R.C. 4123.56(F) (addressing TTD compensation) and revision to R.C. 4123.58(D)(3) (addressing permanent total disability compensation).[2] Specific to TTD compensation, H.B. No. 81 added an entirely new section, R.C. 4123.56(F). It states:

> If an employee is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury or occupational disease, the employee is entitled to receive compensation under this section, provided the employee is otherwise qualified. If an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive compensation under this section. It is the intent of the general assembly to supersede any previous judicial decision that applied the doctrine of voluntary abandonment to a claim brought under this section.

## B. Statutory Interpretation

{¶ 15} "Our paramount concern in examining a statute is the legislature's intent in enacting the statute." *Gabbard v. Madison Local School Dist. Bd. of Edn.*, 165 Ohio St.3d 390, 2021-Ohio-2067, ¶ 13, citing *State ex rel. Steele v. Morrissey, Aud.*, 103 Ohio St.3d 355, 2004-Ohio-4960, ¶ 21. "To discern that intent, we first consider the statutory language, reading all words and phrases in context and in accordance with the rules of grammar and common usage." *Gabbard* at ¶ 13. *State ex rel. Natl. Lime & Stone Co. v. Marion Cty. Bd. of Commrs.*, 152 Ohio St.3d 393, 2017-Ohio-8348, ¶ 14 ("Our role is to evaluate the statute as a whole and to interpret it in a manner that will give effect to every word and clause, avoiding a construction that will render a provision meaningless or inoperative."). "We give effect to the words the General Assembly has chosen, and we may

---

[2] In R.C. 4123.58(D)(3), the legislature replaced "*voluntary abandoned the workforce* for reasons unrelated to the allowed injury" with "*is not working* for reasons unrelated to the allowed injury" as a bar to permanent total disability compensation. (Emphasis sic.)

neither add to nor delete from the statutory language." *Gabbard* at ¶ 13, citing *Columbia Gas Transm. Corp. v. Levin, Tax Commr.*, 117 Ohio St.3d 122, 2008-Ohio-511, ¶ 19. "When the statutory language is unambiguous, we apply it as written without resorting to rules of statutory interpretation or considerations of public policy." *Gabbard* at ¶ 13, citing *Zumwalde v. Madeira & Indian Hill Joint Fire Dist.*, 128 Ohio St.3d 492, 2011-Ohio-1603, ¶ 23-24, 26.

{¶ 16} "Statutory interpretation presents a question of law subject to a de novo standard of review." *State ex rel. McDonald v. Indus. Comm.*, 10th Dist. No. 20AP-386, 2021-Ohio-4494, ¶ 12, citing *Natl. Lime & Stone* at ¶ 14. Under Ohio law, "it is never mandatory for a court to defer to the judgment of an administrative agency" and a court should never do so to "alter the meaning of clear text." *TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Engineers & Surveyors*, ___ Ohio St.3d ___, 2022-Ohio-4677, ¶ 42. However, if a statute is genuinely ambiguous, a court "may consider an agency interpretation based on its persuasive power" along with other tools of interpretation. *Id.* at ¶ 43.

{¶ 17} In this case, the employer first contends, under the plain language of the first sentence of R.C. 4123.56(F), claimant was not "unable to work as a 'direct' result of his injury." (Objs. at 3.) Citing *Merriam-Webster Dictionary* and *State ex rel. Quest Diagnostics, Inc. v. Indus. Comm.*, 10th Dist. No. 20AP-246, 2022-Ohio-1093, the employer asserts the word "direct" means, "[p]roceeding from one point to another in time or space without deviation or interruption," "[p]roceeding by the shortest way," and "[s]temming immediately from a source." (Objs. at 4-5.) Applied here, the employer argues claimant was unable to work as a direct result of his termination, not his impairment.

{¶ 18} The commission points out that *Quest Diagnostics* no longer applies as it is based on the voluntary abandonment doctrine now superseded by R.C. 4123.56(F). According to the commission, the magistrate correctly determined R.C. 4123.56(F) plainly calls for a consideration of the period when TTD was granted without resorting to an analysis akin to the voluntary abandonment of the workforce doctrine that backtracks to the period before TTD is granted. Therefore, the commission contends that, in this case, because it is undisputed that claimant's physician removed claimant from work completely following his approved surgery arising from allowed conditions in the claim, in the

commission's view claimant was unable to work as a direct result of impairment from the allowed conditions in the claim as of the date of surgery.

{¶ 19} Claimant adds that the employer is essentially asking the court to require him to not only meet his burden under R.C. 4123.56(F) to show the workplace injury caused him to be taken out of the workplace, but to add a requirement that claimant eliminate other reasons the claimant had been out of work previously. Claimant emphasizes that TTD compensation was awarded only for the period following surgery—when the evidence shows he could not work anywhere—not any prior date.

{¶ 20} The first sentence at issue here in R.C. 4123.56(F) reads: "If an employee is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury or occupational disease, the employee is entitled to receive compensation under this section, provided the employee is otherwise qualified."[3] It is followed by this statement: "If an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive compensation under this section." R.C. 4123.56(F).

{¶ 21} The word "direct" is not defined in the statute and, therefore, we consider its plain and ordinary meaning within the context of the statute. *Gabbard* at ¶ 13; *Natl. Lime & Stone* at ¶ 14; *Thomas v. Logue*, 10th Dist. No. 21AP-385, 2022-Ohio-1603, ¶ 15, quoting *Rhodes v. New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279, ¶ 17 ("Where 'a term is not defined in the statute, it should be accorded its plain and ordinary meaning.' "). Used as an adjective, relevant definitions of "direct" include: "proceeding from one point to another in time or space without deviation or interruption"; "proceeding by the shortest way"; "stemming immediately from a source"; "having no compromising or impairing element"; "natural, straightforward"; and "characterized by close logical, causal, or consequential relationship." *Merriam-Webster Dictionary* Online, https://www.merriam-webster.com/dictionary/direct (last accessed March 2, 2023).

{¶ 22} Reading the ordinary meaning of "direct" within the context of the statute as a whole, R.C. 4123.56(F) requires a claimant's inability to work to stem immediately from an impairment arising from an injury or occupational disease. We decline to extrapolate an additional requirement in R.C. 4123.56(F) that a claimant prove he or she is unable to

---

[3] We note the parties do not dispute claimant is an "employee" for purposes of R.C. 4123.56.

work *only* due to an impairment arising from an injury or occupational disease. Such a reading would in essence add words to the statute, which courts are not permitted to do. *Gabbard* at ¶ 13. Furthermore, the second sentence of R.C. 4123.56(F) shows the legislature contemplated that multiple "reasons" may contribute to a claimant being unable to work, and only when those reasons are "unrelated" to the workplace injury would TTD be inappropriate. R.C. 4123.56(F). To instead adopt the employer's position would, in essence, turn the court's gaze back to those facts surrounding why the claimant left the workforce preceding the period of TTD compensation—effectively resurrecting the voluntary abandonment analysis expressly superseded by the legislature.

{¶ 23} We note that this plain reading of R.C. 4123.56(F) comports with the Supreme Court's analysis in *State ex rel. BF Goodrich Co. v. Indus. Comm.*, 148 Ohio St.3d 212, 2016-Ohio-7988, ¶ 12-14 in assessing the meaning of "direct result" as that phrase relates to R.C. 4123.56(B) wage loss compensation. *BF Goodrich* involved a claimant who, after being injured in the course of her employment, was placed in the employer's light-duty program. Pursuant to her collective-bargaining agreement, the light-duty program rendered her ineligible for overtime pay, so she filed an application for wage loss compensation based on a reduction in her earnings attributed to the lack of overtime in her light-duty position. The employer contended the claimant's lack of overtime earnings was not directly caused by medical restrictions that specifically limit overtime work, but rather was the result of the 2012 collective bargaining agreement's prohibition on overtime.

{¶ 24} The Supreme Court disagreed. It found the definition of "working wage loss," which states "the diminishment [in wages] must be the *direct result* of physical and/or psychiatric restriction(s) caused by the impairment that is causally related to an industrial injury," means "the loss of wages must be causally related to the allowed conditions of the claim." (Emphasis added.) *Id.* at ¶ 12, citing R.C. 4123.56(B), and ¶ 14, citing Ohio Adm.Code 4125-1-01(A)(15). With this understanding, the Supreme Court held that, because the record contained evidence that the claimant was placed in the light-duty program because of her medical restrictions causally related to the allowed conditions of her claim, the commission did not abuse its discretion when it concluded that the claimant's wage loss was the "direct result" of her inability to return to her previous position due to the physical restrictions resulting from her claim. *Id.* at ¶ 14, 19.

{¶ 25} *BF Goodrich* preceded the enactment of R.C. 4123.56(F), and we presume the legislature was aware of that analysis and holding when drafting R.C. 4123.56(F). *Wayt v. DHSC, L.L.C.*, 155 Ohio St.3d 401, 2018-Ohio-4822, ¶ 23, citing *State ex rel. Huron Cty. Bd. of Edn. v. Howard*, 167 Ohio St. 93, 96 (1957) ("It is well established that the legislature is presumed to have full knowledge of prior judicial decisions."). Considering all the above, we conclude the magistrate did not err in determining claimant was unable to work as a "direct" result of his workplace injury under R.C. 4123.56(F) in this case. The first objection is overruled.

{¶ 26} The employer next argues that the magistrate ignored the requirement in the first sentence of R.C. 4123.56(F) that claimant be "otherwise qualified." (Objs. at 7.) In the employer's view, "otherwise qualified" refers to "the overall workers' compensation statutory scheme," which dictates "[a] person is never qualified to receive compensation unless they are employed to begin with." (Objs. at 7.) The employer cites to this court's decision in *State ex rel. Ohio State Univ. v. Pratt*, 10th Dist. No. 19AP-603, 2021-Ohio-3420, ¶ 5 and 9 in support of its position. Applied here, the employer believes that claimant was not "otherwise qualified" pursuant to R.C. 4123.56(F) since he was not employed at the time of his shoulder surgery due to his termination.

{¶ 27} We disagree. At the outset, we note the employer did not raise the meaning of "otherwise qualified" as an issue to the magistrate until his reply brief. Typically, issues raised for the first time in a reply brief will not be addressed by the court. *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 18 ("Appellate courts generally will not consider a new issue presented for the first time in a reply brief."). We do not fault the magistrate for declining to address that issue specifically when it was not timely raised and overrule the employer's second objection contending err in this regard for that reason alone.

{¶ 28} Nevertheless, even if this issue was properly raised, the employer has not shown the phrase "otherwise qualified" in the first sentence of R.C. 4123.56(F) supports vacating the writ. While the employer's objection is based on this court's *Pratt* decision, 2021-Ohio-3420, *Pratt* relied on the voluntary abandonment doctrine, did not involve R.C. 4123.56(F), and was reversed by the Supreme Court. *See Pratt*, 2022-Ohio-4111 (reversing, in a case preceding application of R.C. 4123.56(F), the Tenth District judgment that held

voluntary abandonment doctrine focused on departure of the injured worker's position rather than the workforce).  As a result, we find this court's *Pratt* decision does not hold any value in assessing the "fundamental tenant" of TTD compensation and has no bearing on the meaning of "otherwise qualified" in the first sentence of R.C. 4123.56(F).  (Objs. at 7.)

**{¶ 29}**  In addition to the lack of legal support for the objection, the plain text of R.C. 4123.56(F) does not support the employer's position.  When R.C. 4123.56 is read as a whole, the phrase "otherwise qualified" in the first sentence of R.C. 4123.56(F) as it relates to TTD compensation plainly refers back to the disqualifications set forth in section (A), i.e., returning to work, a statement from the treating physician states the employee is capable of return to work, the employer or another employer makes work available within the physical capabilities of the employee, or the employee has reached maximum medical improvement ("MMI").  For example, even if a claimant is unable to work as the direct result of an impairment arising from an injury or occupational disease, the claimant is not "otherwise qualified" to receive TTD compensation if he or she has reached MMI.  *See, e.g.*, *State ex rel. R.R. Donnelley & Sons Co. v. Indus. Comm.*, 10th Dist. No. 21AP-119, 2022-Ohio-4774, ¶ 42 (addressing whether claimant could continue to qualify for TTD compensation if she had not achieved MMI).  Therefore, for all of the above reasons, the employer has not shown the magistrate erred by "not [a]pplying the [e]ntirety of the [f]irst [s]entence of R.C. §4123.56(F)."  (Objs. at 6.)

**{¶ 30}**  In the third objection, the employer believes the magistrate erred in failing to apply all of the terms of the *second* sentence of R.C. 4123.56(F), which reads: "If an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive compensation under this section."  Specifically, the employer contends the magistrate failed to apply the first phrase, "[i]f an employee is not working."  The employer argues that because the legislature used "or" between the first two phrases, it intended two circumstances bar TTD compensation: (1) the employee is not working; or (2) the employee suffered a wage lost as a direct result of reasons unrelated to the allowed injury.  (Objs. at 10.)  In other words, the employer contends the phrase "not working" is unmodified by "as [the] direct result of reasons unrelated to the allowed injury."  (Objs. at 9-10.)  Thus,

because claimant was not working at the time he applied for TTD compensation, the employer asserts he was ineligible to receive TTD compensation under the second sentence of R.C. 4123.56(F). The commission and claimant both respond that R.C. 4123.56(F) plainly does not automatically disqualify a claimant from receiving TTD compensation if they are not working since the inability to work could be directly related to the workplace injury.

{¶ 31} We agree with the commission and claimant. Read within the context of the statute, it is clear the legislature did not intend to disqualify any person not working without regard for whether the reason he or she is not working is attributable to the workplace injury. Pursuant to R.C. 4123.56(A), claimants who *are* working are not eligible to receive TTD compensation. To accept the employer's position that claimants who are *not* working are likewise disqualified would render the statute meaningless. *See State ex rel. Clay v. Cuyahoga Cty. Med. Examiners Office*, 152 Ohio St.3d 163, 2017-Ohio-8714, ¶ 22 ("when the General Assembly enacts a statute, it does not intend to produce an absurd result"); *Natl. Lime & Stone* at ¶ 14 (noting a court should not read a statute in a way to "render a provision meaningless or inoperative"). Furthermore, to the extent the employer argues in favor of applying the rule of the last antecedent, which states " ' "referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent," ' " this position similarly fails due to the other clear indicia of meaning, namely R.C. 4123.56(A). *Wohl v. Swinney*, 118 Ohio St.3d 277, 2008-Ohio-2334, ¶ 35, quoting *Indep. Ins. Agents of Ohio, Inc. v. Fabe*, 63 Ohio St.3d 310, 314 (1992), quoting *Carter v. Youngstown Div. of Water*, 146 Ohio St. 203, 209 (1946). *See United States v. Hayes*, 555 U.S. 415, 425 (2009) (emphasizing the rule of the last antecedent "is not an absolute and can assuredly be overcome by other indicia of meaning"). The third objection is overruled.

{¶ 32} In the fourth objection, the employer argues the magistrate erred because claimant "had no [l]ost [W]ages." (Objs. at 10.) Similar to the third objection, the employer contends that as a matter of law an injured worker is not entitled to TTD compensation unless he is employed and actually suffered lost wages. The "concept that there can be no lost earnings if a claimant is no longer part of the 'active workforce' is fundamental." (Objs. at 12.) The employer reiterates its argument in the third objection that R.C. 4123.56(F) bars a claimant from receiving TTD compensation if he is "not working." (Objs. at 12-13.) Thus,

since claimant here was no longer employed at the time he underwent shoulder surgery, he could not have suffered lost wages. The employer cites to *State ex rel. Yuravak v. Indus. Comm.*, 10th Dist. No. 16AP-15, 2016-Ohio-8343, ¶ 64, and *State ex rel. Goff v. Indus. Comm.*, 10th Dist. No. 15AP-1016, 2016-Ohio-7270, ¶ 8.

{¶ 33} The commission and claimant counter that the employer again relies on cases that have been superseded that rely on the voluntary abandonment doctrine and that R.C. 4123.56(F) permits TTD compensation if the claimant is not working due to the allowed conditions in the claim. We again agree with the commission and claimant. As addressed in response to the third objection, not working—alone—is not dispositive, but rather requires an inquiry into whether the claimant is unable to work as the direct result of an impairment arising from an injury or occupational disease. R.C. 4123.56(F). So long as that causal link is established, and he or she is otherwise qualified, the claimant is eligible for TTD compensation. *See* R.C. 4123.56(A), (F); *BF Goodrich* at ¶ 12-14. The fourth objection is overruled.

{¶ 34} In the fifth objection, the employer challenges the magistrate's statement that the claimant's reasons for not working up to the date of his surgery were irrelevant. The employer cites the "long-standing tenet regarding eligibility for workers' compensation" set forth in this court's *Pratt*, 2021-Ohio-3420, decision and *Klein*, as well as *State ex rel. Cleveland Metro. School Dist. v. Indus. Comm.*, 10th Dist. No. 20AP-139, 2022-Ohio-2150, and *State ex rel. Wal-Mart, Inc. v. Hixson*, 10th Dist. No. 19AP-323, 2021-Ohio-3802. (Objs. at 14.) However, the cited cases rely on the voluntary abandonment doctrine and therefore have been superseded as stated in R.C. 4123.56(F). As a result, we do not find them to support the employer's position. Although the employer implies we should analyze the effect of the termination and whether evidence exists that claimant had abandoned the workforce prior to his approved surgery, this is exactly the analysis the legislature expressly superseded by enacting R.C. 4123.56(F). Contrary to the employer's position, R.C. 4123.56(F) requires us to review only whether the claimant in this case was unable to work as the direct result of an impairment arising from an injury or occupational disease to support the grant of TTD for the period specified. The fifth objection is overruled.

{¶ 35} Overall, we find the text of R.C. 4123.56(F) to be unambiguous. If a claimant is unable to work, R.C. 4123.56(F) sets forth two operative questions to be eligible for TTD

compensation: (1) whether he or she is unable to work as the direct result of an impairment arising from an injury or occupational disease; and (2) whether he or she is otherwise qualified to receive TTD compensation. R.C. 4123.56(F) does not impose an additional requirement on a claimant to prove he or she is unable to work *solely* due to an impairment arising from an injury or occupational disease. Only when an otherwise qualified claimant is not working as a direct result of reasons unrelated to the allowed injury or occupational disease is the claimant ineligible to receive TTD compensation.

**{¶ 36}** Applied here, record evidence, namely the MEDCO-14 forms submitted by claimant's physician, demonstrated claimant was completely unable to work following the approved surgery necessitated by an impairment from a workplace injury. We find the evidence sufficient to satisfy the first sentence of R.C. 4123.56(F), showing claimant was unable to work as the direct result of an impairment arising from his workplace injury for the period at issue, and concomitantly sufficient to negate the second sentence of R.C. 4123.56(F), showing the reasons claimant is not working are not "unrelated" to the allowed injury. Therefore, because some evidence supports the commission's decision to grant TTD compensation in this case, we cannot disturb the order. *Aaron's, Inc.*, 2016-Ohio-5011, at ¶ 18.

### IV. Conclusion

**{¶ 37}** Upon review of the magistrate's decision, an independent review of the record, and due consideration of the employer's objections, we find the magistrate has properly determined the pertinent facts and applied the appropriate law. We therefore overrule the employer's five objections to the magistrate's decision and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. Accordingly, the requested writ of mandamus is hereby denied.

*Objections overruled;*
*writ of mandamus denied.*

MENTEL and JAMISON, JJ., concur.

———————————

# APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Autozone Stores, Inc., | : | |
| Relator, | : | |
| v. | : | No. 21AP-294 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

---

## M A G I S T R A T E ' S   D E C I S I O N

Rendered on August 10, 2022

---

*Crabbe Brown & James, LLP,* and *John C. Albert,* for relator.

*Dave Yost,* Attorney General, and *Denise A. Gary,* for respondent Industrial Commission of Ohio.

*Casper, Casper & Casper, LLC,* and *Kolet Buenavides,* for respondent Jason W. Schomaker.

---

IN MANDAMUS

{¶ 38} Relator, Autozone Stores, Inc. ("employer"), has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its April 2, 2021, order that granted the request of respondent Jason W. Schomaker ("claimant") for temporary total disability ("TTD") compensation.

Findings of Fact:

{¶ 39} 1. On June 15, 2020, claimant sustained an injury in the course of and arising out of his employment when he was moving batteries. His workers' compensation claim was allowed for the following conditions: strain of muscle, fascia tendon at shoulder and upper arm level, right biceps tendonitis, and right shoulder bursitis.

{¶ 40} 2. Claimant began working at the employer on May 21, 2016, first as sales representative, then as parts manager, then as store manager, and then as assistant store manager, which is the position he held on the date of his injury on June 15, 2020. He was placed on light duty and continued to work with restrictions.

{¶ 41} 3. On September 5, 2020, claimant was involved in an argument with another employee. The employer conducted an investigation and, based upon those findings, terminated claimant on September 16, 2020.

{¶ 42} 4. On September 16, 2020, claimant filed for unemployment benefits, which the Ohio Department of Job and Family Services ("ODJFS") granted on January 11, 2021, finding that claimant was terminated without just cause.

{¶ 43} 5. On October 12, 2020, claimant filed a C-84 request form seeking TTD compensation. He submitted a second C-84 request form on October 20, 2020.

{¶ 44} 6. On November 3, 2020, Anthony J. Checroun, M.D., issued a MEDCO-14 form indicating claimant could not return to his former job held on the date of injury.

{¶ 45} 7. On November 5, 2020, the employer denied claimant's requests, and the issue was scheduled for a hearing before the commission.

{¶ 46} 8. On November 16, 2020, claimant underwent an approved right shoulder surgery for this claim.

{¶ 47} 9. On December 1, 2020, Dr. Checroun issued a MEDCO-14 form indicating that claimant cannot work until evaluated at a follow-up appointment.

{¶ 48} 10. On December 16, 2020, a district hearing officer ("DHO") denied claimant's request for TTD. Claimant appealed.

{¶ 49} 11. On January 12, 2021, Dr. Checroun issued a MEDCO-14 form indicating claimant cannot work until evaluated at a follow-up appointment.

{¶ 50} 12. On February 23, 2021, Dr. Checroun issued a MEDCO-14 form finding claimant can return to work with restrictions from February 23, to April 19, 2021.

{¶ 51} 13. On March 25, 2021, a hearing was held before a staff hearing officer ("SHO"). In an April 2, 2021, order, the SHO granted claimant's request for TTD compensation from November 16, 2020, to March 25, 2021, to continue upon submission of medical records certifying that he was unable to return to and perform his former position of employment due to the allowed conditions. The SHO found the following: (1) claimant was unable to return to and perform the duties of his former position of employment from November 16, 2020, through March 25, 2021, due to the allowed conditions; (2) claimant underwent an authorized surgery to treat the allowed conditions on November 16, 2020, and during the period afterwards has been recuperating and recovering from the surgery; (3) the findings are based, in part, upon the MEDCO-14 forms from Dr. Checroun dated November 3, and December 1, 2020, and January 12, and February 23, 2021; (4) the SHO rejects the employer's argument that the requested compensation should be denied because the injured worker was terminated by the employer of record on September 16, 2020; (5) pursuant to R.C. 4123.56(F), claimant was unable to work or return to his former position of employment as a direct result of impairment arising from the allowed injury from November 16, 2020, through March 25, 2021; (6) in support of this finding, the SHO relies on the facts that, at the time of the termination, claimant was under restrictions due to the allowed conditions that prevented him from returning to and performing the full duties of his former position of employment, and the MEDCO-14 reports from Dr. Checroun dated December 1, 2020, and January 12, 2021, which are the first two MEDCO-14 reports after the surgery occurred, completely removed claimant from the workforce due to the allowed conditions; and (7) because the SHO finds that claimant was unable to work as a direct result of an impairment arising from an injury, clamant is entitled to receive the ordered compensation.

{¶ 52} 14. The employer appealed the SHO's order to the commission, which refused further appeal on April 27, 2021.

{¶ 53} 15. On June 11, 2021, the employer filed a petition for writ of mandamus.

Conclusions of Law and Discussion:

{¶ 54} The magistrate recommends that this court deny the employer's writ of mandamus.

{¶ 55} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 56} A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 57} TTD compensation awarded pursuant to R.C. 4123.56 is compensation for wages lost when a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) the claimant has returned to work; (2) the claimant's treating physician provides a written statement that the claimant is able to return to the former position of employment; (3) work within the physical capabilities of the claimant is made available by the employer or another employer; or (4) the claimant has reached maximum medical improvement. R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

{¶ 58} R.C. 4123.56, which was amended by H.B. No. 81, effective September 15, 2020, modified the prior version of R.C. 4123.56 by adding the following entirely new language pertaining to voluntary abandonment:

> (F) If an employee is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury or occupational disease, the employee is entitled to receive compensation under this section, provided the employee is otherwise qualified. If an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive compensation under this section. It is the intent of the general assembly to supersede any previous judicial decision that applied the doctrine of voluntary abandonment to a claim brought under this section.

R.C. 4123.56(F). Here, the commission, the employer, and claimant agree that the amended version of R.C. 4123.56(F) applies to the present case.

{¶ 59} The employer asserts the following arguments in support of mandamus: (1) claimant did not suffer a wage loss because he was terminated for violating the employer's policies and never returned to the workforce, pointing out that claimant never missed a day of work at the employer after his injury and worked light duty until he was terminated; (2) because claimant was terminated as a result of his own actions and became unemployed for reasons entirely unrelated to his injury, he was not working due to his own actions and not the result of his workplace injury; (3) in granting TTD compensation, the SHO relied upon only the first sentence of R.C. 4123.56(F), and applied incorrect facts; the first sentence of R.C. 4123.56(F) requires that the inability to work must be the direct result of an impairment arising from an injury, and the SHO concluded that this section applied here because, at the time of termination, claimant was under restrictions due to the allowed conditions, which prevented him from returning to and performing the full duties of his former position of employment; however, that fact is not correct because, at the time of termination, claimant was working fulltime, light-duty work and had not missed any work since his injury; (4) claimant's surgery could not have completely removed him from the workforce, as the SHO found, because claimant was not working at the time of the surgery and could not have suffered a wage loss due to the surgery or injury; and (5) the SHO failed to consider the second sentence of R.C. 4123.56(F), which provides that if an employee is not working or has suffered a wage loss as a direct result of reasons unrelated to the allowed injury, the employee is not eligible to receive compensation; here, there is no dispute that claimant was not employed since his termination and, thus, had no wage loss caused by his surgery but, instead, any wage loss was due to his being unemployed based upon his own actions.

{¶ 60} A court's duty is to give effect to the words used in a statute, not to delete or insert words. *State v. Maxwell*, 95 Ohio St.3d 254, 2002-Ohio-2121, ¶ 10. "Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation. An unambiguous statute is to be applied, not interpreted." *Sears v. Weimer*, 143 Ohio St. 312 (1944), paragraph five of the syllabus. "Only when a definitive meaning proves elusive should rules

for construing ambiguous language be employed. Otherwise, allegations of ambiguity become self-fulfilling." *State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, ¶ 11. Moreover, "administrative deference has no place in the face of an unambiguous text." *State ex rel. Fire Rock, Ltd. v. Ohio Dept. of Commerce*, 163 Ohio St.3d 277, 2021-Ohio-673, ¶ 18.

{¶ 61} In ascertaining the meaning of a statute, a court's paramount concern is legislative intent. *State v. Jackson*, 102 Ohio St.3d 380, 2004-Ohio-3206, ¶ 34, citing *State ex rel. Asberry v. Payne*, 82 Ohio St.3d 44, 47 (1998). To discern legislative intent, a court first considers the statutory language, "reading words and phrases in context and construing them in accordance with rules of grammar and common usage." *State ex rel. Choices for South-Western City Schools v. Anthony*, 108 Ohio St.3d 1, 2005-Ohio-5362, ¶ 40.

{¶ 62} In the present matter, the magistrate finds the commission properly construed and applied amended R.C. 4123.56(F). Amended R.C. 4123.56(F) contains two distinct sections for determining whether an employee is entitled to TTD compensation based upon wage loss. Pursuant to the first section, an employee is entitled to receive compensation if the employee is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury or occupational disease. As this first section applies here, claimant was entitled to receive compensation because he underwent an authorized surgery to treat the allowed conditions on November 16, 2020. Claimant was unable to work as of the date of his surgery, as supported by the MEDCO-14 reports from Dr. Checroun dated December 1, 2020, and January 12, 2021. Thus, as of the date of his surgery, claimant was "unable to work * * * as the direct result of an impairment arising from an injury." R.C. 4123.56(F). The current facts fit squarely within the plain language of this section.

{¶ 63} Pursuant to the second section of R.C. 4123.56(F), if an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive wage-loss compensation. As this second section applies here, claimant underwent surgery due to the allowed conditions, and commencing on the date of the November 16, 2020, surgery, claimant was not able to work per Dr. Checroun's MEDCO-14 reports. Thus, immediately

post-surgery, claimant was not working as a direct result of reasons related to the allowed injuries. At that point, his failure to work was not "a direct result of reasons unrelated to the allowed injury." R.C. 4123.56(F). Contrary to the employer's argument, as of November 16, 2020, claimant was unable to work regardless of the reason for or cause of his termination on September 16, 2020. His reason for not working up until the date of surgery was irrelevant for purposes of determining his eligibility for wage-loss compensation after the surgery due to the allowed conditions. Even if it were assumed that claimant was not working prior to November 16, 2020, due to his termination from his former position of employment, once claimant underwent surgery due to his allowed workplace injury, the reason he was not working could no longer be directly attributable to reasons unrelated to the workplace injury, i.e., his termination. Instead, his not working, at that point, was directly attributable to his surgery, which was necessitated by an allowed workplace injury. As the SHO noted, claimant had been able to work, with restrictions, at the time of his termination, but the surgery completely removed him from the workforce per Dr. Checroun's MEDCO-14s. Although claimant could have been working for another employer prior to the surgery, he was completely unable to work after the surgery. For these reasons, the magistrate finds the commission properly construed and applied amended R.C. 4123.56(F), there was some evidence to support the commission's determination that claimant was entitled to wage loss compensation from November 16, 2020, through March 25, 2021, to continue upon the submission of medical evidence, and the commission did not abuse its discretion.

{¶ 64} Accordingly, it is the magistrate's recommendation that this court should deny the employer's petition for writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).