IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Michell Brown, | : | |
| Relator, | : | |
| v. | : | No. 21AP-650 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on March 5, 2024

**On brief:** *The Bainbridge Firm*, *LLC*, and *Casaundra L. Johnson*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *Anna Isupova,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

DORRIAN, J.

{¶ 1} Relator, Michell Brown, filed this original action in mandamus seeking a writ compelling respondent Industrial Commission of Ohio ("commission") to vacate its order denying her application for temporary total disability ("TTD") compensation and to enter an order granting TTD compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate recommends this court deny Brown's request for a writ of mandamus. For the following reasons, we overrule Brown's objections to the magistrate's decision and deny the writ.

{¶ 3} Brown has filed the following four objections to the magistrate's decision:

[I.] The magistrate erred in finding that amended R.C. 4123.56(F) applied to the present case.

[II.] The magistrate erred in finding that the Industrial Commission of Ohio did not abuse its discretion when it denied TTD compensation under R.C. 4123.56(F).

[III.] The magistrate erred in finding that Dr. Dunkin's report is "some evidence."

[IV.] The magistrate erred in finding that there was "some evidence to support the commission's determination that the claimant was [] not entitled to wage loss compensation," when the underlying commission orders do not involve a request for wage loss compensation.

{¶ 4}  Brown was employed by respondent A+ Arts Academy ("Academy") on September 1, 2017 when she suffered an injury due to a fall at work.  A workers' compensation claim was allowed for displaced fracture of lateral condyle of the left tibia and left lateral meniscus tear. Brown underwent surgery for the fracture on September 7, 2017 and was able to return to work for Academy at some point later.  On August 29, 2019, Brown underwent surgery to remove previously placed hardware from her left knee.  On September 10, 2019, the Ohio Bureau of Workers' Compensation ("BWC") granted TTD compensation commencing August 29, 2019 based on new and changed circumstances arising from the August 29th surgery.[1]  Brown undertook physical therapy and was medically approved to return to light-duty work beginning November 9, 2019, with restrictions, including wearing a brace on her left knee and taking seated breaks as needed for pain.  Brown returned to work for Academy on November 4, 2019.

{¶ 5}  Brown consulted her physicians in January and February 2020, reporting continuing left knee pain and instability.  On May 13, 2020, BWC granted Brown's motion to allow additional related conditions to her claim.  Brown last worked for Academy on May 23, 2020, and Academy laid off Brown due to the COVID-19 pandemic on May 29, 2020.

---

[1] Brown received TTD compensation through November 7, 2019. BWC later issued an order finding that Brown's TTD compensation should have terminated on November 4, 2019, based on her return to work, and charged her with an overpayment for the period from November 4 through 7, 2019.

{¶ 6} On December 9, 2020, Brown filed a request for TTD compensation commencing May 23, 2020. At the request of the commission, Dr. David Dunkin reviewed the medical file. On December 15, 2020, Dr. Dunkin issued a report concluding, in part, that Brown's job duties were mostly sedentary, and Academy had worked with her to make accommodations and the medical evidence was insufficient to substantiate that Brown was unable to work at her former position of employment. One of Brown's physicians subsequently completed a report indicating Brown was unable to return to her former position from May 23, 2020 through March 15, 2021, but could return to work with restrictions as of January 18, 2021.

{¶ 7} A commission district hearing officer ("DHO") issued an order granting Brown's request for TTD compensation, finding the allowed conditions prevented Brown from returning to her former position of employment and she had not reached maximum medical improvement. A commission staff hearing officer ("SHO") issued an order vacating the DHO's order and denying Brown's request for TTD compensation, finding Brown was not working as of May 23, 2020 for reasons unrelated to her allowed conditions and that TTD compensation was not supported by the medical evidence based on Dr. Dunkin's report. Brown filed a request for reconsideration of the SHO's order, which the commission denied. Brown then filed a petition for writ of mandamus in this court.

{¶ 8} A relator seeking a writ of mandamus from a commission decision must demonstrate he/she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Rouch v. Eagle Tool & Machine Co.*, 26 Ohio St.3d 197, 198 (1986). A clear legal right to a writ of mandamus exists when the commission abuses its discretion by entering an order not supported by some evidence. *State ex rel. Elliot v. Indus. Comm.*, 26 Ohio St.3d 76, 79 (1986). *See also State ex rel. Aaron's Inc. v. Ohio Bur. of Workers' Comp.*, 148 Ohio St.3d 34, 2016-Ohio-5011, ¶ 18 ("When an order is adequately explained and based on some evidence, there is no abuse of discretion and a reviewing court must not disturb the order."). We review questions of law de novo on appeal. *State ex rel. Autozone Stores, Inc. v. Indus. Comm.*, 10th Dist. No. 21AP-294, 2023-Ohio-633, ¶ 7.

{¶ 9} In her first objection, Brown asserts the magistrate erred by concluding that R.C. 4123.56(F) applied to her request for TTD compensation. As the magistrate's decision

explains, R.C. 4123.56(F) became effective on September 15, 2020, having been added to the statute by Am.Sub. H.B. No. 81 of the 133rd General Assembly. Brown argues the statute does not apply to her request because she sought TTD compensation for a period beginning May 23, 2020, which was before the effective date of R.C. 4123.56(F).

{¶ 10} The magistrate rejected this argument, citing our decision in *Autozone*, which noted that Section 3 of Am.Sub.H.B. No. 81 expressly provided that the amendments to R.C. 4123.56 contained in the legislation "appl[ied] to claims pending on or arising after the effective date" of the legislation. Brown effectively suggests that her claim arose on May 23, 2020, prior to the effective date of R.C. 4123.56(F). However, we need not resolve the question of when Brown's claim arose; if Brown is correct that her claim arose as of May 23, 2020, it was unquestionably "pending on" the effective date of R.C. 4123.56(F) because Brown did not file her request for TTD compensation until December 9, 2020. Alternatively, if Brown's claim arose as of the date she filed the request for TTD compensation, then it arose after the effective date of R.C. 4123.56(F). In either event, pursuant to the terms of Section 3 of Am.Sub.H.B. No. 81, R.C. 4123.56(F) applies to Brown's claim for TTD compensation. Additionally, the cases Brown cites in support of her first objection are consistent with this conclusion because in each of those cases the commission had ruled on the TTD compensation claim *before* the effective date of R.C. 4123.56(F). Thus, in those cases the claim was not "pending on or arising after" September 15, 2020. *See State ex rel. Ohio State Univ. v. Pratt*, 169 Ohio St.3d 527, 2022-Ohio-4111, ¶ 10, fn. 2 (holding R.C. 4123.56(F) did not apply in a case where the commission decided the TTD compensation claim before September 15, 2020); *State ex rel. Walmart, Inc. v. Hixson*, 10th Dist. No. 19AP-323, 2021-Ohio-3802, ¶ 5-7 (magistrate concluded R.C. 4123.56(F) did not apply to a case where the commission's final ruling was issued on June 26, 2018); *State ex rel. Cleveland Metro. School Dist. v. Indus. Comm.*, 10th Dist. No. 20AP-139, 2022-Ohio-2150, ¶ 48 (following *Hixson* in case where commission's final order was issued on September 26, 2019).

{¶ 11} Accordingly, we overrule Brown's first objection.

{¶ 12} Brown's second and third objections are related, and we will address them together. In her second objection, Brown argues the magistrate erred in finding that the commission did not abuse its discretion by denying her request for TTD compensation

under R.C. 4123.56(F).  In her third objection, Brown asserts the magistrate erred by concluding that Dr. Dunkin's report was some evidence on which the commission could rely in denying her request for TTD compensation.

{¶ 13} Brown concedes that she returned to work for Academy after her injury with accommodations.  She argues this was "akin to a return to light duty" and asserts she was eligible for TTD compensation because she was unable to return to her former position of employment without limitations.  (Relator's Objs. at 9.)  However, R.C. 4123.56(A) provides in part that TTD compensation payments "shall not be made for the period * * * when work within the physical capabilities of the employee is made available by the employer or another employer."  Consistent with this principle, we have held that when a claimant takes work within provided restrictions and then is terminated for reasons unrelated to the allowed conditions, the claimant is not eligible for TTD compensation.  *See State ex rel. Schumacher v. Auto Sys. Ctrs., Inc.*, 10th Dist. No. 16AP-535, 2017-Ohio-5523, ¶ 36 ("Many claimants cannot return [to] their former position of employment.  If they take work within their restrictions and later are incapable of working due to the allowed conditions, they are eligible to receive TTD compensation.  Likewise, if they take work within their restrictions and are terminated for reasons unrelated to the allowed conditions, they are not eligible to receive TTD compensation.").  As explained in the magistrate's decision, Dr. Dunkin concluded Brown's job duties were mostly sedentary and the medical evidence was insufficient to establish she was not capable of performing those duties with the accommodations provided by Academy.  Therefore, the magistrate did not err by concluding Dr. Dunkin's report constituted some evidence on which the commission could rely.

{¶ 14} Brown also argues that under R.C. 4123.56(F), she was not required to establish her allowed conditions were the sole reason she was not working.  Brown concedes she was laid off due to the COVID-19 pandemic, but argues she remains eligible for TTD compensation because she was also unable to work due to her allowed conditions.  In *Autozone*, we "decline[d] to extrapolate an additional requirement in R.C. 4123.56(F) that a claimant prove he or she is unable to work *only* due to an impairment arising from an injury or occupational disease." (Emphasis sic.)  *Autozone* at ¶ 22.  Thus, we recognized there may be multiple reasons contributing to a claimant being unable to work "and only

when those reasons are 'unrelated' to the workplace injury would TTD [compensation] be inappropriate." *Id.* Although Brown was not required to establish her allowed conditions were the sole reason she was not working, she was required to establish that those conditions were a reason she was not working. However, the commission found that Brown was capable of working as of May 23, 2020. Thus, the magistrate properly concluded the commission did not err in applying R.C. 4123.56(F).

{¶ 15} Accordingly, we overrule Brown's second and third objections.

{¶ 16} In her fourth objection, Brown asserts the magistrate erred by finding there was some evidence to support a determination that she was not entitled to wage loss compensation because her claim involved a request for TTD compensation under R.C. 4123.56(A) rather than wage loss compensation under R.C. 4123.56(B). In *Autozone*, we noted that "R.C. 4123.56(B) accounts for situations where an employee suffers a 'wage loss' due to a workplace injury or occupational disease and provides a formula to compensate the employee for the reduction of wages resulting from employment in a lower paying position or from the employee's inability to find employment consistent with his or her disability." *Autozone* at ¶ 11. *See State ex rel. Rogers v. Indus. Comm.*, 10th Dist. No. 22AP-759, 2024-Ohio-223, ¶ 23. Brown is correct that she sought TTD compensation, claiming she was unable to work due to her allowed conditions; Brown did not claim that her wages had been reduced. Notwithstanding the magistrate's reference to wage loss compensation in his conclusory paragraph, the remainder of his analysis as to whether there was some evidence to support the commission's decision referred to TTD compensation. Therefore, we conclude the magistrate's reference to wage loss compensation was a typographical error and does not affect the magistrate's conclusions. We modify paragraph 63 of magistrate's decision, as appended to this decision, to state that "there was some evidence to support the commission's determination that claimant was not entitled to TTD compensation from May 23, 2020, through March 1, 2021, to continue upon the submission of medical evidence, and the commission did not abuse its discretion."

{¶ 17} Accordingly, we overrule Brown's fourth objection.

{¶ 18} Upon review of the magistrate's decision, an independent review of the record, and due consideration of Brown's objections, we find the magistrate has properly determined the pertinent facts and applied the appropriate law. We therefore overrule

Brown's four objections to the magistrate's decision and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein.  However, we modify the magistrate's decision to correct a typographical error that stated "claimant was not entitled to wage loss compensation" but should state "claimant was not entitled to TTD compensation." Accordingly, the requested writ of mandamus is hereby denied.

*Objections overruled*;
*writ of mandamus denied.*

BOGGS and EDELSTEIN, JJ., concur.

————————————

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Michell Brown, | : | |
| Relator, | : | |
| v. | : | No. 21AP-650 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on September 19, 2023

*The Bainbridge Firm, LLC,* and *Casaundra L. Johnson,* for relator.

*Dave Yost,* Attorney General, and *Anna Isupova,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 19} Relator, Michell Brown ("claimant"), has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order that denied her request for temporary total disability ("TTD") compensation and to enter an order granting said compensation.

Findings of Fact:

{¶ 20} 1. On September 1, 2017, claimant sustained an injury in the course of and arising out of her employment with respondent A+ Arts Academy ("employer") when she slipped and fell on a wet floor while leaving her office. Initially, her workers' compensation

claim was allowed for the following conditions: displaced fracture of lateral condyle left tibia closed fracture; lateral meniscus tear left. Her claim was subsequently allowed for the following conditions: post traumatic arthritis, left knee; malunion lateral tibial plateau fracture, left; painful orthopedic hardware, left knee; tricompartmental osteoarthrosis left knee; and major depressive disorder single episode mild.

{¶ 21} 2. On September 7, 2017, claimant underwent surgery for the lateral tibial plateau fracture. She returned to work but developed pain due to the installed hardware.

{¶ 22} 3. On August 7, 2019, claimant filed a C-86 motion requesting TTD compensation from August 29, 2019, through September 11, 2019, and to continue.

{¶ 23} 4. On August 29, 2019, claimant underwent surgery to remove the left knee hardware.

{¶ 24} 5. On September 10, 2019, the bureau of workers' compensation ("BWC") granted TTD compensation beginning August 29, 2019, finding that claimant underwent orthopedic surgery on August 29, 2019, which constituted a new and changed circumstance.

{¶ 25} 6. On October 9, 2019, Ryan K. Harrison, M.D., completed a MEDCO-14 form, releasing claimant to work light duty starting November 4, 2019, with restrictions including the wearing of a knee brace on her left knee and taking seated breaks.

{¶ 26} 7. On October 9, 2019, claimant completed physical therapy, and she returned to work on November 4, 2019.

{¶ 27} 8. In a January 7, 2020, report, Charles D. May, D.O., found the following: (1) claimant is currently working regular duty with the same job and employer; (2) claimant has left knee pain and swelling, and her knee gives out; (3) claimant states that she is unable to perform all of the duties of her prior job but is not working with formal restrictions, but the employer allows her to sit and change positions as much as needed; (4) Dr. May cannot explain why claimant's left knee continues to be so painful and swollen, and she does have significant impairment in this knee; (5) claimant may need to consider pain management such as a neurostimulator if nothing further can be done surgically; and (6) Dr. May is submitting a form C-9 requesting a second opinion with an orthopedic knee surgeon.

{¶ 28} 9. On February 17, 2020, J. Mark Hatheway, M.D., performed an orthopedic second opinion, and found the following: (1) claimant has had ongoing left knee pain,

stiffness, and instability; (2) claimant has significant to severe arthritic changes in her left knee; (3) claimant has fairly severe tricompartmental osteoarthritis of the left knee; (4) Dr. Hatheway will request viscosupplementation injection for her left knee; and (5) post-traumatic arthritis to the left knee should be added to the claim.

{¶ 29} 10. On February 27, 2020, Dr. Hatheway requested a series of three Synvisc injections, which were approved on March 4, 2020.

{¶ 30} 11. On March 11, 2020, claimant saw Rae Lynn Eyre, CNP, at Dr. May's office. Ms. Eyre found the following: (1) claimant continues to work full duty with formal restrictions, and the employer allows her as many breaks as needed with the ability to change positions often; (2) claimant will follow up with Dr. Hatheway regarding viscosupplementation injections; and (3) Ms. Eyre issued her a handicap placard.

{¶ 31} 12. On May 13, 2020, the BWC granted claimant's C-86 motion requesting that the claim be additionally allowed for post-traumatic arthritis, malunion of lateral tibial plateau fracture, painful orthopedic hardware, and substantial aggravation of pre-existing tricompartmental osteoarthritis.

{¶ 32} 13. On May 20, 2020, claimant returned to Dr. Hatheway, who found in a report of the same date the following: (1) claimant completed her series of Synvisc injections; (2) the injections helped somewhat; (3) claimant still has ongoing pain in the knee with inability to stand or walk for long periods; (4) claimant has a limp; (5) claimant has significant crepitus on range of motion of the left knee; and (6) claimant has mild valgus deformity and significant arthritis of the left knee.

{¶ 33} 14. Claimant last worked May 23, 2020, and she did not return to work after that date due to the COVID-19 pandemic. The employer laid off claimant from her job on May 29, 2020, based upon COVID-19 pandemic.

{¶ 34} 15. On October 3, 2020, Dr. Hatheway completed a MEDCO-14, indicating that claimant was unable to return to her former position of employment from May 23, 2020, through December 14, 2020, due to malunion lateral tibial plateau fracture and left knee arthritis.

{¶ 35} 16. On October 9, 2020, claimant returned to Dr. Hatheway, who recommended claimant undergo a venous Doppler study and recommended a second series of three viscosupplementation injections.

**{¶ 36}** 17. Claimant underwent an independent medical examination ("IME") for an impairment-rating opinion by William P. Anderson, D.C., and in an October 18, 2020, report, Dr. Anderson found claimant had a whole person impairment of 27 percent. Dr. Anderson noted she continued to have left knee pain, tenderness, and edema.

**{¶ 37}** 18. On December 9, 2020, claimant requested TTD compensation from May 23, 2020, through March 1, 2021, and to continue.

**{¶ 38}** 19. On December 15, 2020, at the request of the commission, David Dunkin, D.O., completed a review of the medical file and found in a report of the same date the following: (1) the file has no documentation from any medical provider providing evidence of a substantial change in circumstances beginning May 23, 2020; (2) the first and second series of injections are noted to be a temporary attempt and previously documented ineffective pain management procedure, not a procedure that has a reasonable expectation to change the circumstances of the claimant; (3) none of the office records submitted by Dr. Hatheway document any opinion that claimant is temporarily and totally disabled; (4) Dr. Hatheway does not document any opinion of ability or inability to work and does not document any recent change in circumstances; (5) Dr. Hatheway's May 20, 2020, office note does not document any change in circumstances; (6) Dr. Hatheway provided no office records from May 20, 2020, until October 9, 2020; (7) Dr. Hatheway's October 23, 2020, and October 30, 2020, notes do not document work status or functional status; (8) Dr. Hatheway's MEDCO-14 provided no clinical documentation and was unpersuasive; (9) the file has no medical records from May 20, 2020, until October 9, 2020; (10) claimant's attorney arranged and obtained a C92 exam determining permanent partial impairment rating by chiropractor Dr. Anderson in a report dated October 18, 2020, which is inconsistent with a temporary condition; (11) Dr. Anderson's October 18, 2020, C92 exam report does not document the work status of claimant; (12) the case manager's documentation indicates that claimant was released by the employer as of May 29, 2020, due to COVID-19 business difficulties and unrelated to the injuries in the claim; (13) the May 28, 2018, vocational rehabilitation management closure report indicates claimant's job duties are mostly sedentary, and the employer has worked with her related to any standing or walking requirements; (14) these provisions would indicate that the inability to stand or walk any distances would not create disability with the employer; (15) the file has

no motion documenting the request of any procedure that would reasonably be expected to substantially change the circumstances of any of the allowed conditions in the claim; (16) the medical evidence is insufficient to support ongoing TTD related to the allowed conditions beginning May 23, 2020, forward; (17) based on the job accommodation documented in 2018 and the lack of any change in job accommodation documented by Dr. Hatheway, the medical evidence is insufficient to substantiate that the injured worker is unable to work at the former position of employment described as a primarily sedentary job.

{¶ 39} 20. On January 13, 2021, Dr. Hatheway completed a MEDCO-14, indicating that claimant was unable to return to her former position of employment from May 23, 2020, through March 15, 2021, but could return to work with restrictions as of January 18, 2021.

{¶ 40} 21. On March 9, 2021, a district hearing officer ("DHO") granted claimant's request for TTD, finding the following: (1) the allowed conditions prevented claimant from returning to her former position of employment, and she has not reached maximum medical improvement ("MMI"); (2) Dr. Hatheway saw claimant on May 20, 2020, and recommended Synvisc injections, of which at least two were performed; (3) on January 15, 2021, Dr. Hatheway stated claimant's left knee had gotten worse and gives out when walking, but he also found claimant is not a candidate for a total knee replacement, instead recommending water aerobics and weight loss; and (4) the order is based upon the June 1, 2020, C-84 request for TTD compensation; the October 13, 2020, and January 13, 2021, MEDCO-14 reports from Dr. Hatheway; and Dr. Hatheway's reports of June 20, October 9, October 23, and October 30, 2020, and January 15, 2021. The BWC appealed.

{¶ 41} 22. On March 13, 2021, claimant requested TTD, indicating she was laid off on May 23, 2020, but continued to undergo treatment for her leg.

{¶ 42} 23. On March 17, 2021, claimant was examined by Dr. Hatheway, who issued a report indicating the following: (1) claimant continues to have significant arthritic pain and stiffness of the left knee; (2) claimant has a limp; (3) there is crepitus on range of motion of the left knee; and (4) viscosupplementation injections have provided some relief, and she would like to try them again.

{¶ 43} 24. On March 18, 2021, Dr. Hatheway issued a MEDCO-14, certifying TTD from May 23, 2020, through May 10, 2021, with light-duty restrictions.

{¶ 44} 25. After a hearing, on April 27, 2021, the staff hearing officer ("SHO") issued an order vacating the DHO's order and denying claimant's request for TTD compensation, finding the following: (1) the DHO's order is vacated; (2) the December 9, 2020, request for TTD compensation is denied; (3) claimant was not working as of May 23, 2020, for reasons unrelated to the claim and allowed conditions; (4) claimant testified at hearing that she had been laid off from her job as a teacher's aide due to the COVID-19 pandemic; thus, she is not eligible for TTD compensation pursuant to R.C. 4123.56(F); (5) TTD is not supported by the medical evidence based on the December 15, 2020, report of Dr. Dunkin; and (6) all evidence was reviewed and considered in rendering the decision. Claimant appealed.

{¶ 45} 26. On May 12, 2021, claimant filed a request for reconsideration, which the commission denied on May 19, 2021.

{¶ 46} 27. On December 6, 2021, claimant filed the current petition for writ of mandamus.

{¶ 47} 28. Claimant filed her brief, the commission filed its brief, and claimant filed her reply brief. On June 17, 2022, the commission filed a motion to strike portions of claimant's reply brief, asserting that the reply brief contained one new legal argument and one new policy argument that were not included in claimant's original brief.

Conclusions of Law and Discussion:

{¶ 48} The magistrate recommends that this court deny claimant's petition for writ of mandamus.

{¶ 49} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 50} A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex*

*rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 51} TTD compensation awarded pursuant to R.C. 4123.56 is compensation for wages lost when a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) the claimant has returned to work; (2) the claimant's treating physician provides a written statement that the claimant is able to return to the former position of employment; (3) work within the physical capabilities of the claimant is made available by the employer or another employer; or (4) the claimant has reached maximum medical improvement. R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

{¶ 52} R.C. 4123.56, which was amended by H.B. No. 81, effective September 15, 2020, modified the prior version of R.C. 4123.56 by adding the following entirely new language pertaining to voluntary abandonment:

> (F) If an employee is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury or occupational disease, the employee is entitled to receive compensation under this section, provided the employee is otherwise qualified. If an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive compensation under this section. It is the intent of the general assembly to supersede any previous judicial decision that applied the doctrine of voluntary abandonment to a claim brought under this section.

R.C. 4123.56(F).

{¶ 53} Claimant asserts the following two arguments in her mandamus brief: (1) the commission abused its discretion when it denied claimant's request for TTD compensation on the basis that she was not eligible for compensation under R.C. 4123.56(F); and (2) the commission erred when it denied claimant's request for TTD compensation based on the report of Dr. Dunkin, which was not some evidence.

{¶ 54} With regard to claimant's first argument, claimant asserts that, although her request for TTD compensation was filed after R.C. 4123.56(F) became effective, the SHO

should not have applied the new statutory provision retroactively to her case because her right to TTD compensation vested or accrued before the statute went into force, and it attaches a new standard for disability that was in effect when the period of adjudication began. However, amended R.C. 4123.56(F) applies to claims pending on or arising after the effective date, which is September 15, 2020. *State ex rel. Autozone Stores, Inc. v. Indus. Comm. of Ohio*, 10th Dist. No. 21AP-294, 2023-Ohio-633, fn. 1, citing *State ex rel. Ohio State Univ. v. Pratt*, 169 Ohio St.3d 527, 2022-Ohio-4111, ¶ 10, fn. 2, and *State ex rel. Cleveland Metro. School Dist. v. Indus. Comm.*, 10th Dist. No. 20AP-139, 2022-Ohio-2150, ¶ 47-48. Thus, because claimant in this case requested TTD compensation on December 9, 2020, and the SHO issued its decision on April 27, 2021, amended R.C. 4123.56(F) applies to the present case. Therefore, claimant's argument is without merit.

{¶ 55} Alternatively, claimant contends that, even if R.C. 4123.56(F) applies to her case, the SHO erred in finding that she was not eligible for TTD compensation because she was laid off and not working due to the COVID-19 pandemic. She claims that R.C. 4123.56(F) provides that an injured worker is eligible for TTD compensation when he or she "is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury or occupational disease[,]" and, in this case, she was essentially working light-duty accommodated by the employer when Dr. Hatheway's subsequent MEDCO-14s added limitations that prevented her from returning to full duty. Claimant argues that denying TTD compensation under R.C. 4123.56(F) based solely on a worldwide pandemic that prompted her layoff, without consideration of the evidence showing she was working light duty prior to the layoff and was unable to return to her former position of employment beginning May 23, 2020, is an abuse of discretion.

{¶ 56} The magistrate finds the commission properly construed and applied amended R.C. 4123.56(F) to claimant's case. Amended R.C. 4123.56(F) contains two distinct sections for determining whether an employee is entitled to TTD compensation based upon wage loss. Pursuant to the first section, an employee is entitled to receive compensation if the employee is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury or occupational disease. As this first section applies here, claimant was not entitled to receive compensation because she was unable to work and suffered a wage loss as a result of her employer's laying her off due to the COVID-19

pandemic. Although she may have been working with restrictions at the time of her layoff, the commission found that she was capable of working as of May 23, 2020 These facts place claimant's case squarely within the plain language of this section.

{¶ 57} Pursuant to the second section of R.C. 4123.56(F), if an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive wage-loss compensation. As this second section applies here, the commission found that claimant was not working and had suffered a wage loss as a direct result of reasons unrelated to the allowed injury. The magistrate finds no error with the commission's conclusion. Claimant was not working at the time of her requested period of TTD compensation because the employer laid her off due to the COVID-19 pandemic. Claimant's circumstances fall within the purview of the second sentence in R.C. 4123.56(F). For these reasons, the magistrate finds the commission properly construed and applied amended R.C. 4123.56(F).

{¶ 58} With regard to claimant's second argument that the commission erred when it denied her request for TTD compensation based on the report of Dr. Dunkin, the magistrate finds that Dr. Dunkin's report constitutes "some evidence" to support its decision. As explained above, questions of credibility and the weight to be given evidence are within the discretion of the commission. Initially, the SHO specifically indicated that all of the evidence was reviewed and considered in rendering the decision; thus, the SHO reviewed the evidence cited by claimant but apparently found it unpersuasive. Instead, the SHO found credible Dr. Dunkin's December 15, 2020, report.

{¶ 59} Claimant contends that Dr. Dunkin's report was not some evidence because it was not based on the correct legal standard for TTD compensation, as set forth in *Ramirez* and *State ex rel. Consol. Coal Co. v. Indus. Comm.*, 58 Ohio St.2d 127 (1979). *Ramirez* and *Consolidated Coal* define TTD as a disability that prevents a worker from returning to his or her former position of employment. Claimant asserts that, contrary to Dr. Dunkin's finding, Dr. Hatheway's treatment records from February 17, and May 20, 2020, document that claimant was having difficulty performing full duty even with the accommodations provided by the employer, which allowed her to take breaks and shift positions as needed. However, despite that there existed treatment records indicating claimant may have been having difficulty performing full duty even with accommodations,

such records do not detract from Dr. Dunkin's ultimate conclusion that claimant's job duties were generally sedentary, and her employer had provided accommodations for her to fulfill her job duties. Any difficulty in performing those job duties is not equivalent to finding that she was prevented from performing her position of employment.

{¶ 60} Claimant next argues that Dr. Dunkin's assertion that there was no evidence of a substantial change on May 23, 2020, is inconsistent with the objectively worsening examination findings from January 2020 through May 2020. However, even if the record contained evidence that claimant's condition was worsening, Dr. Dunkin's conclusion is still correct: There was no evidence in the record that anything specific happened as of May 23, 2020, that would entitle claimant to TTD compensation starting on that date. The only thing that the record suggests occurred on May 23, 2020, is that claimant worked her last day before COVID-19 prevented her from working any longer, with her employer subsequently laying her off on May 29, 2020, due to COVID-19. Dr. Dunkin notes that Dr. Hatheway's May 20, 2020, office note does not document any change in circumstances. The magistrate cannot find any error in Dr. Dunkin's observation that there was no evidence of any substantial change to claimant's condition on May 23, 2020.

{¶ 61} Claimant also asserts that Dr. Dunkin's opinion was based, at least in part, on the fact that Dr. Hatheway did not complete a MEDCO-14 at or around the time of the May 20, 2020, office visit. Claimant contends that this is not the correct standard for determining TTD compensation and is, instead, an assessment of credibility and persuasiveness of evidence that is beyond the scope of his role. Although the magistrate cannot locate this exact finding in Dr. Dunkin's December 2020 report, Dr. Dunkin did indicate that Dr. Hatheway's May 20, 2020, office note does not document any medical opinion of work status or inability to work. Notwithstanding, the magistrate notes that much of Dr. Dunkin's critique of claimant's TTD compensation claim revolves around the fact that the record lacks evidence of claimant's inability to work as of May 23, 2020. It is Dr. Hatheway's MEDCO-14 dated October 3, 2020, that indicates claimant was unable to work as of May 23, 2020. Although a MEDCO-14 filed at the exact time of the claimed disability date is not required, a more contemporaneous MEDCO-14, in addition to evidence suggesting some change in claimant's medical status as of May 23, 2020, might have lent some persuasiveness to claimant's claim of disability as of that date.

{¶ 62} Claimant also argues that Dr. Dunkin acknowledged that claimant was not performing her full range of work duties and was being provided accommodations by the employer prior to the requested period of disability at issue. Thus, claimant claims, Dr. Dunkin's conclusion that TTD compensation was not supported by the record is inconsistent with his own findings that claimant required accommodations in order to continue working. While it is true that a report that is internally inconsistent cannot be some evidence supporting the commission's decision, *State ex rel. Lopez v. Indus. Comm.*, 69 Ohio St.3d 445, 449 (1994), Dr. Dunkin's report was not internally inconsistent. Dr. Dunkin noted that claimant's job duties are mostly sedentary, and the employer has worked with claimant related to any standing or walking requirements. Dr. Dunkin opined that these provisions would indicate that the inability to stand or walk any distances would not create disability with the employer of record. Dr. Dunkin then concluded that, based on the job accommodation document in 2018, and the lack of any change in job accommodation documented by Dr. Hatheway, the medical evidence was insufficient to substantiate that claimant was unable to work at the former position of employment, which was primarily a sedentary job. Nowhere does Dr. Dunkin indicate that claimant was not performing her full range of work duties. Instead, the record indicates that claimant was performing her former job with some accommodations. A worker who requires accommodations may still be capable of sedentary employment, which is how Dr. Dunkin categorized claimant's former position. *See generally State ex rel. Kidd v. Indus. Comm.*, ___ Ohio St.3d ___, 2023-Ohio-2975. Thus, Dr. Dunkin concluded that because claimant's job duties were mostly sedentary, and claimant was able to perform those duties with the accommodations afforded by the employer, claimant was not disabled from performing her former position of employment. Therefore, claimant's argument, in this respect, is without merit.

{¶ 63} For all the foregoing reasons, there was some evidence to support the commission's determination that claimant was not entitled to wage loss compensation from May 23, 2020, through March 1, 2021, to continue upon the submission of medical evidence, and the commission did not abuse its discretion.

{¶ 64} As for the commission's motion to strike portions of claimant's reply brief, asserting that the reply brief contained one new legal argument and one new policy argument that were not included in claimant's original brief, the purpose of a reply brief is

to afford an opportunity to respond to the brief of the opposing party, not to raise a new argument for the first time. *Cullinan v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 15AP-390, 2016-Ohio-1083, ¶ 19. The court will generally not consider an argument or issue raised for the first time in a reply brief. *State v. E.T.*, 10th Dist. No. 17AP-828, 2019-Ohio-1204, ¶ 62. Here, the magistrate has considered only arguments contained in claimant's initial brief; therefore, the commission's motion is denied as moot.

{¶ 65} Accordingly, it is the magistrate's recommendation that this court should deny claimant's petition for writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.