[Cite as *State ex rel. Davidson v. John T. Lohrer Constr. Co.*, 2024-Ohio-1224.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Craig S. Davidson, | : | |
| Relator, | : | |
| | : | No. 22AP-465 |
| v. | : | (REGULAR CALENDAR) |
| John T. Lohrer Construction Co. et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on March 29, 2024

**On brief:** *Weisser & Wolf*, and *Mark Weisser*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *Anna Isupova*, for respondent Industrial Commission of Ohio.

IN MANDAMUS

MENTEL, P.J.

{¶ 1} Relator, Craig S. Davidson, brought this original action seeking a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order that denied his request for temporary total disability ("TTD") compensation, and to enter an order granting said compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate. On November 6, 2023, the magistrate issued the appended decision, including findings of fact and conclusions of law, recommending this court grant relator's petition for writ of mandamus finding that the commission abused its discretion and improperly construed and applied amended R.C. 4123.56(F). The magistrate

concluded that relator is entitled to TTD compensation from December 2, 2021 through March 24, 2022 to continue upon the submission of medical evidence. No objections were filed in this case. "If no timely objections are filed, the court may adopt a magistrate's decision, unless it determines that there is an error of law or other defect evident on the face of the magistrate's decision." Civ.R. 53(D)(4)(c). Our review of the magistrate's decision reveals no error of law or other facial defect that would preclude adopting it. *See, e.g., State ex rel. Wyse v. Ohio Pub. Emp. Retirement Sys*, 10th Dist. No. 22AP-25, 2024-Ohio-314, ¶ 2, citing *State ex rel. Alleyne v. Indus. Comm.*, 10th Dist. No. 03AP-811, 2004-Ohio-4223 (adopting the magistrate's decision where no objections were filed).

**{¶ 3}**   Accordingly, we adopt the decision of the magistrate as our own, including findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we grant relator's petition for a writ of mandamus.

*Writ of mandamus granted.*

BEATTY BLUNT and EDELSTEIN, JJ., concur.

_____

# APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Craig S. Davidson, | : | |
| Relator, | : | |
| v. | : | No. 22AP-465 |
| John T. Lohrer Construction Co. et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on November 6, 2023

*Weisser & Wolf*, and *Mark Weisser,* for relator.

*Dave Yost,* Attorney General, and *Anna Isupova,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 4} Relator, Craig S. Davidson ("claimant"), has filed this original action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order that denied his request for temporary total disability ("TTD") compensation, and to enter an order granting said compensation.

Findings of Fact:

{¶ 5}   1. On November 7, 2011, claimant sustained an injury in the course of and arising out of his employment with respondent, John T. Lohrer Construction Co. ("employer"), when he was involved in a car accident. His workers' compensation claim

was allowed for the following conditions: sprain neck; sprain thoracic region; sprain lumbar region; contusion back; contusion buttock; disc extrusion L4-L5; spinal stenosis lumbar region; L4-L5; radiculopathy L4-L5 and L5-S1; and major depressive disorder, single episode, moderate.

{¶ 6}  2. On October 13, 2015, claimant underwent a lumbar fusion under his claim.

{¶ 7}  3. On February 10, 2017, claimant underwent a spinal cord stimulator implantation procedure. On March 2, 2018, claimant underwent a revision surgery to adjust the spinal cord stimulator.

{¶ 8}  4. On February 15, 2018, claimant's claim was amended to include major depressive disorder, single episode, moderate.

{¶ 9}  5. Claimant received TTD compensation for his allowed psychological condition until November 26, 2019, when he was found to be at maximum medical improvement ("MMI").

{¶ 10}  6. On December 19, 2018, D. Scott Long, M.D., found that claimant had not reached MMI.

{¶ 11}  7. In a December 11, 2019, office note, Barry Rubin, D.O., claimant's treating physician, found claimant was "probably at MMI" for the physical conditions allowed in the claim. After this office note, Dr. Rubin did not complete any MEDCO-14 forms indicating that claimant was TTD as a result of the allowed physical conditions.

{¶ 12}  8. In early- to mid-2020, due to COVID-19, commission hearings were suspended, and claimant's medical treatments took place via teleconferencing.

{¶ 13}  9. On February 28, 2020, claimant filed a request for a CT scan. The request was initially denied, but after commission hearings resumed, the commission approved the CT scan in July 2020.

{¶ 14}  10. On March 29, and April 1, 2021, claimant received epidural steroid injections. A May 13, 2021, office note from Janalee Rissover, M.D., indicated that the injections were not effective and recommended a neurological consult with Christopher Neumann, M.D.

{¶ 15} 11. On September 13, 2021, Dr. Neumann, submitted a request for surgery to repair the prior lumbar microdiscectomy, which was subsequently approved, and the procedure was performed on December 2, 2021.

{¶ 16} 12. On December 17, 2021, claimant filed a request for TTD compensation from the date of his back surgery on December 2, 2021, through March 24, 2022, and to continue with medical proof. Claimant submitted a MEDCO-14 signed by Dr. Neumann.

{¶ 17} 13. On February 15, 2022, a district hearing officer ("DHO") held a hearing on claimant's request for TTD compensation, and on February 17, 2022, the DHO denied claimant's request, finding the following: (1) claimant last worked on June 26, 2012, and has not worked anywhere since; (2) Dr. Rubin opined on December 11, 2019, that claimant was probably at MMI; (3) claimant was found to have reached MMI on his psychological conditions on November 26, 2019, and did not attempt to return to work thereafter; (4) claimant had surgery under this claim on December 2, 2021; (5) claimant had not worked for nine and one-half years prior to his surgery, and more recently had not worked since he was found to have reached MMI over two years prior to his surgery; and (6) pursuant to R.C. 4123.56(F), claimant has failed to provide sufficient evidence that he suffered a wage loss as a direct result of his injury. Claimant appealed.

{¶ 18} 14. On April 6, 2022, the staff hearing officer ("SHO") issued an order finding the following: (1) claimant failed to satisfy his burden of proving by a preponderance of the evidence that he was entitled to TTD compensation; (2) claimant was not in the workforce as of December 2, 2021, and is, therefore, not entitled to TTD compensation beginning on that date; (3) claimant was last paid TTD compensation on November 26, 2019, when he was found by the commission to be at MMI for the allowed psychological condition; (4) while there does not appear to be a formal finding of MMI for the allowed physical conditions, claimant's then treating physician, Dr. Rubin, stated in his December 11, 2019, office note that claimant was probably at MMI for the allowed physical conditions; (5) Dr. Rubin did not complete any MEDCO-14 forms (Physician's Report of Work Ability) subsequent to this time indicating that claimant was TTD as a result of the allowed physical conditions; (6) rather, Dr. Rubin completed a C-9 Request for Medical Service Reimbursement on January 27, 2020, and a February 24, 2020, MEDCO-14 indicating that claimant should participate in vocational rehabilitation and

requesting the same; however, claimant withdrew this request, per the commission's July 30, 2020, order; (7) claimant made no meaningful attempt to try to secure employment from the time he was found to be at MMI for the allowed psychological condition until the request for TTD compensation to begin on December 2, 2021, for the allowed physical conditions; (8) claimant underwent lower-back surgery on December 2, 2021, as a result of the allowed medical conditions, and claimant requested TTD compensation from this date forward; (9) under R.C. 4123.56(F), a claimant must prove that the work-related injuries removed the worker from employment, and this requirement for TTD compensation cannot be satisfied if the worker is out of the workforce at the time of the beginning of the alleged period of disability; (10) R.C. 4123.56(F) is consistent with this long-standing law in Ohio; (11) R.C. 4123.56(F) essentially directs an inquiry into why an injured worker is off work; if the worker is off work as a result of being unable to work due to impairment from the injury in the claim, then the worker is entitled to compensation for being off work; however, if the worker is already off work for reasons unrelated to the injury in the claim, then compensation is not payable; (12) claimant last received TTD compensation on November 26, 2019, when he was found by the commission to be at MMI for the allowed psychological condition; (13) from that point forward, no physician disabled claimant from employment for the allowed physical conditions until December 2, 2021, a period of over two years; (14) there was insufficient evidence that claimant was in the workforce or attempted to make any meaningful effort to find employment during the period from November 26, 2019, through December 1, 2021, a period of over two years; (15) claimant was not removed from the workforce as a result of the December 2, 2021, lower-back surgery; rather, claimant's work status was not affected in any way, as claimant was not in the workforce prior to the period of disability requested; (16) claimant's actions, or more accurately lack of proof of any action in trying to find employment for over two years, show he was no longer in the workforce, thereby precluding him from receiving TTD compensation; and (17) therefore, claimant has failed to satisfy his burden of proving his entitlement to TTD compensation from December 2, 2021, to the date of the hearing, and continuing.

{¶ 19} 15. Claimant filed an appeal of the SHO order, which the commission refused. Claimant then filed a request for reconsideration, and the commission granted a hearing on the request.

{¶ 20} 16. On July 20, 2022, the commission issued an order denying claimant's request for reconsideration, finding the following: (1) the commission does not have authority to exercise continuing jurisdiction; and (2) claimant failed to meet his burden of proving sufficient grounds exist to justify the exercise of continuing jurisdiction.

{¶ 21} 17. On July 27, 2022, claimant filed the current petition for writ of mandamus.

Conclusions of Law and Discussion:

{¶ 22} The magistrate recommends that this court grant claimant's petition for writ of mandamus.

{¶ 23} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 24} A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 25} TTD compensation awarded pursuant to R.C. 4123.56 is compensation for wages lost when a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) the claimant has returned to work; (2) the claimant's treating physician provides a written statement that the claimant is able to return to the former position of employment; (3) work within the physical capabilities of the claimant is made available by the employer or another employer; or (4) the claimant has reached maximum

medical improvement. R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

{¶ 26} R.C. 4123.56, which was amended by H.B. No. 81, effective September 15, 2020, modified the prior version of R.C. 4123.56 by adding the following entirely new language pertaining to voluntary abandonment:

> (F) If an employee is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury or occupational disease, the employee is entitled to receive compensation under this section, provided the employee is otherwise qualified. If an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive compensation under this section. It is the intent of the general assembly to supersede any previous judicial decision that applied the doctrine of voluntary abandonment to a claim brought under this section.

{¶ 27} In the present case, claimant argues there is no legitimate dispute that his loss of earnings from December 2, 2021, to March 24, 2022, was proximately caused by his work injury. Claimant asserts that the commission abused its discretion when it concluded his failure to seek employment from November 26, 2019, (when he was found to be at MMI on his psychological conditions) until December 2, 2021, precluded the receipt of TTD compensation. Claimant claims he was actively treating and attempting to diagnose the ongoing issues with his lumbar spine and that he was, in fact, incapable of work during this period, pointing out the following: (1) he was never found to have reached MMI with respect to the allowed physical conditions, and on December 19, 2018, Dr. Long found he was not at MMI; (2) during the COVID-19 pandemic starting in March 2020, he could only be treated telephonically, but Dr. Rissover did request a CT scan, which was eventually approved in July 2020; (3) Dr. Rissover requested epidural steroid injections, which were approved in early 2021; (4) he underwent the injections on March 29, and April 1, but on May 13, 2021, Dr. Rissover noted that the injections were not effective and requested a neurosurgical consultation with Dr. Neumann; (5) a myelogram was conducted on August 16, 2021, showing a failed instrumentation from the prior lumbar surgery, resulting in a request for surgery by Dr. Neumann on November 16, 2021; (6) Dr. Neumann performed the surgery on December 2, 2021; (7) Dr. Neumann submitted MEDCO-14 forms certifying TTD from December 2, 2021, through June 30,

2022; (8) Dr. Rissover completed a MEDCO-14 certifying TTD compensation from November 26, 2019, through December 2, 2021; (9) there is no medical evidence suggesting that claimant was not disabled from returning to his former position of employment during this period; and (10) there was no administrative finding that he had ever reached MMI as to his physical conditions prior to December 2, 2021. Accordingly, claimant contends that, applying R.C. 4123.56(F), he was unable to work from December 2, 2021 (the date of surgery), through March 24, 2022, as a direct result of his allowed injuries, and he was not working during this period solely due to his allowed injuries.

{¶ 28} This court's recent decision in *State ex rel. AutoZone Stores, Inc. v. Indus. Comm.*, 10th Dist. No. 21AP-294, 2023-Ohio-633, is instructive. In *AutoZone*, the claimant was working as an assistant store manager for the employer when he sustained an injury. A workers' compensation claim was allowed, and the claimant was placed on light duty. The claimant was then involved in an argument with another employee and was terminated. The claimant filed a request for TTD compensation, which was denied by the employer. The claimant then underwent an approved shoulder surgery, and a physician issued MEDCO-14 forms indicating the claimant could not work until further evaluation. The DHO denied the claimant's request for TTD compensation after examining the details of the claimant's termination. After the claimant appealed, the SHO granted the claimant's request for TTD compensation, but only for the period between his surgery and the hearing with the SHO. In doing so, the SHO rejected the employer's argument that TTD compensation should be denied since the claimant had been terminated. Instead, the SHO determined, based on the fact the claimant was under restrictions due to the allowed conditions at the time of the termination and was completely removed from the workforce after the subsequent approved surgery (as evidenced by the MEDCO-14 forms), pursuant to R.C. 4123.56(F), the claimant was unable to work as a direct result of an impairment arising from the allowed injury from the date of the allowed surgery through the date of the hearing. In the employer's writ of mandamus action, the magistrate denied a writ, and this court denied the employer's subsequent objections.

> In *AutoZone*, with regard to the first section of R.C. 4123.56(F), the employer argued the claimant was unable to

work as a direct result of his prior job termination, not his impairment arising from the subsequent allowed surgery. This court addressed "direct result," as used in both the first and second sentences in R.C. 4123.56(F), as follows: Reading the ordinary meaning of "direct" within the context of the statute as a whole, R.C. 4123.56(F) requires a claimant's inability to work to stem immediately from an impairment arising from an injury or occupational disease. We decline to extrapolate an additional requirement in R.C. 4123.56(F) that a claimant prove he or she is unable to work only due to an impairment arising from an injury or occupational disease. Such a reading would in essence add words to the statute, which courts are not permitted to do. [*Gabbard v. Madison Local School Dist. Bd. of Edn.*, 165 Ohio St.3d 390, 2021-Ohio-2067, ¶ 13]. Furthermore, the second sentence of R.C. 4123.56(F) shows the legislature contemplated that multiple "reasons" may contribute to a claimant being unable to work, and only when those reasons are "unrelated" to the workplace injury would TTD be inappropriate. R.C. 4123.56(F). To instead adopt the employer's position would, in essence, turn the court's gaze back to those facts surrounding why the claimant left the workforce preceding the period of TTD compensation—effectively resurrecting the voluntary abandonment analysis expressly superseded by the legislature.

*AutoZone* at ¶ 22.

{¶ 29} Thus, this court in *AutoZone* concluded the magistrate did not err in determining claimant was unable to work as a "direct" result of his workplace injury under R.C. 4123.56(F).

{¶ 30} *AutoZone* guides the present case. The key facts in *AutoZone* are similar to those here. In both cases, the injured workers were not working before their allowed surgery that rendered them temporarily and totally disabled. The injured workers in both cases were unemployed immediately preceding allowed surgeries that were necessitated by the industrial injury. Both workers then applied for TTD compensation because they were unable to work in any capacity after the allowed surgeries, a fact supported by the medical evidence in both cases. This court in *AutoZone* found the claimant's circumstances fit within the first sentence in R.C. 4123.56(F), because the claimant was unable to work as a direct result of his workplace injury after he underwent the allowed surgery. Therefore, the magistrate finds that the present circumstances fall within the

purview of the first sentence in R.C. 4123.56(F) because claimant was unable to work as a direct result of the allowed surgery that was necessitated by his workplace injury.

{¶ 31} However, the commission argues that in considering the second sentence in R.C. 4123.56(F), the commission must undergo an analysis as to why the employee is not working as of the date of the alleged period of TTD. The commission points out that the SHO here did such an analysis and found claimant was not working as of November 26, 2019, for reasons unrelated to the allowed conditions in the claim, and, thus, he was not removed from the workforce as a result of his December 2, 2021, surgery. The commission asserts that the SHO properly determined that claimant's work status was not affected in any way by the surgery because he was not in the workforce prior to the requested period of disability. Applying the second sentence in R.C. 4123.56(F) to the present case, the commission urges that claimant was not working and had suffered a wage loss as the direct result of reasons unrelated to the allowed injury; i.e., his choice to no longer work.

{¶ 32} The commission's argument sounds like the doctrine of voluntary unemployment, which was explicitly superseded by the amendment of R.C. 4123.56(F). It is also the same argument made by the employer in *AutoZone* and rejected by this court. It is clear from *AutoZone* that the fact that an injured worker was not working prior to the claimed period of TTD does not automatically disqualify a claimant from receiving TTD compensation, as the commission acknowledged in *AutoZone. AutoZone* at ¶ 30. Similarly, in *AutoZone*, this court rejected the concept that an injured worker is not entitled to TTD compensation unless he is employed and actually suffered lost wages at the time of the claimed period of TTD. *Id.* at ¶ 32-33. Also with regard to the second sentence in R.C. 4123.56(F), in *AutoZone* we addressed the employer's argument that the magistrate erred when he found that a claimant's reasons for not working up to the date of his surgery were irrelevant. This court noted that the cases relied upon by the employer to challenge the magistrate's statement relied on the doctrine of voluntary abandonment. *Id.* at ¶ 34. We found that, "[a]lthough the employer implies we should analyze the effect of the termination and whether evidence exists that claimant had abandoned the workforce prior to his approved surgery, this is exactly the analysis the legislature expressly superseded by enacting R.C. 4123.56(F)." *Id.* We explained that, "[c]ontrary to the employer's position, R.C. 4213.56(F) requires us to review only whether the claimant

in this case was unable to work as the direct result of an impairment arising from an injury

or occupational disease to support the grant of TTD for the period specified." *Id.*

> This court in *AutoZone* then went on to summarize, as follows: Overall, we find the text of R.C. 4123.56(F) to be unambiguous. If a claimant is unable to work, R.C. 4123.56(F) sets forth two operative questions to be eligible for TTD compensation: (1) whether he or she is unable to work as the direct result of an impairment arising from an injury or occupational disease; and (2) whether he or she is otherwise qualified to receive TTD compensation. R.C. 4123.56(F) does not impose an additional requirement on a claimant to prove he or she is unable to work solely due to an impairment arising from an injury or occupational disease. Only when an otherwise qualified claimant is not working as a direct result of reasons unrelated to the allowed injury or occupational disease is the claimant ineligible to receive TTD compensation.
>
> Applied here, record evidence, namely the MEDCO-14 forms submitted by claimant's physician, demonstrated claimant was completely unable to work following the approved surgery necessitated by an impairment from a workplace injury. We find the evidence sufficient to satisfy the first sentence of R.C. 4123.56(F), showing claimant was unable to work as the direct result of an impairment arising from his workplace injury for the period at issue, and concomitantly sufficient to negate the second sentence of R.C. 4123.56(F), showing the reasons claimant is not working are not "unrelated" to the allowed injury. Therefore, because some evidence supports the commission's decision to grant TTD compensation in this case, we cannot disturb the order.

*Id*. at ¶ 35-36.

{¶ 33} Nowhere in the first paragraph above did this court indicate that the commission must look back to the time prior to the period of claimed TTD and determine why a claimant was not working. The court also did not undergo such an analysis in the second paragraph above to determine the claimant's eligibility for TTD. Instead, as this court explained, if a claimant is unable to work, R.C. 4123.56(F) sets forth only two operative questions to be eligible for TTD compensation: (1) whether he or she is unable to work as the direct result of an impairment arising from an injury or occupational disease; and (2) whether he or she is otherwise qualified to receive TTD compensation. There is no requirement that a claimant prove he or she is unable to work solely due to an

impairment arising from an injury or occupational disease. In other words, although there may be other reasons why an employee is not working, as long as he or she is unable to work as the direct result of an impairment arising from an injury or occupational disease, that is sufficient for TTD-compensation eligibility.

{¶ 34} As applied here, similar to *AutoZone*, the MEDCO-14 form signed by Dr. Neumann demonstrated claimant was unable to work following the approved surgery necessitated by an impairment from a workplace injury. Thus, there was uncontroverted evidence sufficient to satisfy the first sentence of R.C. 4123.56(F), showing claimant was unable to work as the direct result of an impairment arising from his workplace injury for the period at issue. Concomitantly, there was also evidence sufficient to negate the second sentence of R.C. 4123.56(F), showing the reasons claimant was not working after the surgery are not "unrelated" to the allowed injury. Consistent with this magistrate's explanation in *AutoZone* at ¶ 63, the reason claimant was not working up until the date of surgery is irrelevant for purposes of determining his eligibility for wage-loss compensation after the surgery due to the allowed conditions. Even if it were assumed that claimant was not working prior to the surgery based on personal choice or other reasons, once claimant underwent surgery due to his allowed workplace injury, the reason he was not working at that point could no longer be directly attributable to reasons unrelated to the workplace injury. Instead, claimant's not working, at that point, was directly attributable to his surgery, which was necessitated by an allowed workplace injury. Even if no physician disabled claimant from employment for the allowed physical conditions until December 2, 2021, as the SHO found, the surgery completely removed him from the workforce per Dr. Neumann's MEDCO-14.

{¶ 35} For these reasons, the magistrate finds the commission abused its discretion and improperly construed and applied amended R.C. 4123.56(F). Claimant is entitled to TTD compensation from December 2, 2021, through March 24, 2022, to continue upon the submission of medical evidence.

{¶ 36} Accordingly, it is the magistrate's recommendation that this court should grant the claimant's petition for writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.